**Robert M. BURNS, Plaintiff-Appellant,**

v.

**ANCHOR–WATE CO. and Brown and Root, Inc., Defendants-Appellees.**

**No. 72–1470**

**Summary Calendar.\***

United States Court of Appeals, Fifth Circuit.

Nov. 13, 1972.

Rehearing Denied Jan. 9, 1973.

---

\* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.

W. D. Atkins, Jr., Lafayette, La., for plaintiff-appellant.

James Diaz, Lafayette, La., for Brown & Root, Inc.

Patrick A. Juneau, Jr., Lafayette, La., for Anchor-Wate Co.

Before JOHN R. BROWN, Chief Judge and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

On April 29, 1969, Harold Burns, an employee of Anchor-Wate, was fatally injured while tallying pipe aboard a barge owned by Brown and Root, Inc. Burns' father brought this survival action against his son's employer, Anchor-Wate, under the Jones Act, 46 U.S.C.A. § 688, and against Brown and Root, under the general maritime law on the theory that the barge was unseaworthy.

The District Court, at the close of Appellant's evidence, entered a directed verdict in favor of the employer, Anchor-Wate, concluding as a matter of law that decedent did not have the requisite seaman status necessary to sustain recovery under the Jones Act. The unseaworthiness claim against Brown and Root went to the jury on special interrogatories under F.R.Civ.P. 49(a). The jury categorically found the barge was not unseaworthy. The result was that the father lost all around.

This appeal challenges the action of the Trial Court (i) in directing a verdict on the seaman status of decedent and (ii) in improperly instructing the jury on the unseaworthiness issue. Finding the first contention to be without merit, we affirm the Court's entry of a directed verdict. Agreeing that the Court improperly instructed the jury on the unseaworthiness issue, we reverse and remand for a new trial on the action against Brown and Root.

*The Facts*

Harold Burns was employed by the Anchor-Wate Company at its dock in the Hero Canal at Oakville, Louisiana, where Anchor-Wate operated a pipe-coating yard. Barges laden with pipe are continuously brought to the company's docks where the uncoated pipe is unloaded and treated pipe reloaded for transportation to the oil fields and other destinations. Harold's duties as a "tally-man" were to go aboard the barges to count and measure the pieces of pipe as they were loaded and unloaded. When not engaged in that activity he would aid in cleaning and washing the ends of the pipe and occasionally, he would perform other chores off the barges. However, he spent most of his working time aboard the pipe barges. Rarely though, did his work require him to be aboard a particular barge for longer than 2 or 3 hours. None of the pipe barges belong to Anchor-Wate. Burns never assisted in the navigation or operation of the barges, nor did he ever sleep or take his meals on the barges or the towing vessels.

On April 29, 1969, Burns was working on a barge owned and operated by Brown & Root, Inc., performing his usual task of tallying pipe. A heavy piece of concrete pipe being loaded by a crane located on the dock slipped out of its hooks and slid down the stack of pipe. It struck Burns, at first pinning him between barge and dock, and then rolled over him carrying him into the ca-

nal. Burns' leg was crushed, eventually requiring amputation. But even this measure was not enough to save his life. He died four days later.

### Employee's Status As Seaman

■ The attack here is that the Trial Court erred in directing a verdict on the all-important issue of whether or not Employee, at the time of his injury, was a "seaman" within the double play of the exclusivity provisions of the Longshoreman's and Harbor Workers' Act, 33 U.S.C.A. § 901 et seq., and the Jones Act, 46 U.S.C.A. § 688, which restricts seamen's status to persons considered crew members, "more or less permanently attached to a vessel or fleet of specified vessels." Thomas v. Peterson Marine Service, Inc., 5 Cir., 1969, 411 F.2d 592, 593, 1969 A.M.C. 1327, 1328, cert. denied, 1970, 396 U.S. 1006, 90 S.Ct. 562, 24 L.Ed.2d 499.[1] The argument is that under the test announced in Offshore Co. v. Robison, 5 Cir., 1959, 266 F.2d 769, 1959 A.M.C. 2049, there was a sufficient evidentiary basis for this issue to have been submitted to the jury.[2] We disagree.

■ Although it is a rare case which presents a factual setting so clear that the seaman status issue can be resolved as a matter of law, Hardaway Contracting Co. v. O'Keeffe, 5 Cir., 1969, 414 F.2d 657, 661, 1969 A.M.C. 73, 77; Bodden v. Coordinated Caribbean Transport, Inc., 5 Cir., 1966, 369 F.2d 273, 275, 1967 A.M.C. 2731; Offshore Co. v. Robison, supra,[3] we think the present case,

1. See also Swanson v. Marra Bros., Inc., 1945, 328 U.S. 1, 66 S.Ct. 869, 90 L.Ed. 1045, 1945 A.M.C. 1040; Senko v. Lacrosse Dredging Corp., 1957, 352 U.S. 370, 77 S.Ct. 415, 1 L.Ed.2d 404, 1957 A.M.C. 891.

In Braniff v. Jackson Avenue-Gretna Ferry, Inc., 5 Cir., 1960, 280 F.2d 523, 1961 A.M.C. 1728, this Court, recognizing the murky issues inherent in resolving the oft-presented question of just who is a "Jones Act seaman" made these comments:

"One of the difficulties in this field is that in determining relative rights the status of the ambiguous-amphibious maritime worker is arrived at through a process of exclusions, some statutory, some basically constitutional. For example, here we deal with two workers claimed to be seamen and hence the proper subject of death actions under the Jones Act, 46 U.S.C.A. § 688. The Employer counters with the contention that for these water-borne deaths, the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq., was the exclusive standard. But that Act [Longshoremen's] by its own terms excludes the "master or member of a crew of any vessel." 33 U.S.C.A. § 902(3). In many ways the problem is comparable to the one posed when the contest is between state versus Longshoremen Act compensation coverage. Again, the Longshoremen's Act is exclusive, 33 U.S.C.A. § 905, where applicable. The troubled waters occur not in the end result so much

as they do in the determination of which law is applicable. For the Longshoremen's Act provides that it shall apply as to injuries sustained upon navigable waters of the United States, but only 'if recovery for the disability or death through workmen's compensation proceedings may not validly be provided by State law. * * *' 33 U.S.C.A. § 903. A decision in these cases, then, is seldom reached in terms that the person is not of one specified status (e. g., seaman) because he is another (e. g., Longshoremen's Act) for that is really the result, not the reason why."

2. "There is an evidentiary basis for a Jones Act case to go to the jury: (1) if there is evidence that the injured workman was assigned permanently to a vessel * * * or performed a substantial part of his work on the vessel; and (2) if the capacity in which he was employed or the duties which he performed contributed to the function of the vessel or to the accomplishment of its mission, or to the operation or welfare of the vessel in terms of its maintenance during its movement or during anchorage for its future trips." Offshore Co. v. Robison, supra, 266 F.2d at 779, 1959 A.M.C. at 2062.

3. This means, as Judge Tuttle recognized for us in Hardaway Contracting Co. v. O'Keeffe, 414 F.2d 657, 660, 1969 A.M.C. 73, 77, that "the fact finder may find that one person is either a 'seaman' under the Jones Act, or a 'member of a crew of

as did Thomas v. Peterson Marine Services, *supra,* upon which the District Court relied in entering the directed verdict,[4] falls within this quite narrow group.

For it is here uncontroverted that decedent was not more or less permanently attached to a vessel or a specific fleet of vessels. He neither took his meals nor slept on any of the barges or their towing vessels. Nor did he perform any function necessary to the operation of either the barge upon which he was injured or any other of the numerous barges upon which he assisted in the loading/unloading of pipe. Rather, aside from his other land-based duties which included regular work in the Anchor-Wate yard, he assisted in loading pipe on whichever barge was present, spending no more than a few hours on each one. The barges upon which he did work did not belong to his employer nor did they belong to any one company.

Under the narrow factual confines of this case, the District Court was correct in determining that the employee was not a Jones Act seaman. Keener v. Transworld Drilling Co., 5 Cir., 1972, 468 F.2d 729.

### The Unseaworthiness Claim

But while Employee was not a bluewater Jones Act seaman vis-a-vis his employer, he was within the range of a *Sieracki-Ryan-Yaka* seaman, to whom

the warranty of seaworthiness is extended. The claim was that the barge was unseaworthy because of the unsafe method used to load it. Specifically, he alleged that (i) the pipe already loaded on the barge at the time of the accident was improperly stacked, chocked and braced, (ii) the particular piece which dropped and hit the deceased was mishandled through the negligence of the crane operator, (iii) the crane and boom, with all its lines and other appliances, was unsafe because the operator could not clearly see the barge or the loading point of the pipe, there being no window or opening in the cab of the crane, and (iv) there was no flagman employed to signal the "blind" operator as to the movements of the pipe. Because of Victory Carriers v. Law, 1971, 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, 1972 A.M.C. 1, the unseaworthiness of the barge cannot alone be found in the uncraneworthiness of the crane.[5]

But insofar as the characteristics of the shorebased crane presented hazards which ought reasonably to be foreseen in the loading/unloading of the heavy pipe, the absence of such safeguards could render the barge unseaworthy because of the continued employment of unsafe methods of loading/unloading. D/S Ove Skou v. Hebert, 5 Cir., 1966, 365 F.2d 341, 1966 A.M.C. 447; Mills v. Mitsubishi Shipping Co., 5 Cir., 1966, 358 F.2d 609, 1966 A.M.C. 1318; Price

---

any vessel' under the Longshoremen's Act, whereas a different fact finder might, on the same state of facts, find exactly to the contrary."

4. After concluding that the District Court had correctly entered summary judgment in favor of the employer, this Court in Thomas v. Peterson Marine Services, *supra,* went on to state:

"The undisputed facts reflect that [the plaintiff] lacked the status necessary to sue . . . for negligence under the Jones Act, the plaintiff must be a member of a crew and this means he must be more or less permanently attached to a vessel or fleet of specified vessels. * * * The undisputed facts in this case show that Thomas was a shore-based worker hired by Peterson

Marine, an independent contractor, to do a special job in the hold of the S/T Mobil Acme and that he was not employed by the owner of the vessel and was not in any sense permanently attached to that vessel. As between the Jones Act and the Longshoremen's Act, the latter is his exclusive remedy." 411 F.2d at 593, 1969 A.M.C. at 1328.

5. Cf. Deffes v. Federal Barge Lines, Inc., 5 Cir., 1966, 361 F.2d 422, 1966 A.M.C. 1415; Chagois v. Lykes Bros. Steamship Company, 5 Cir., 1970, 432 F.2d 388, 1971 A.M.C. 1734, vacated and remanded, 404 U.S. 1009, 92 S.Ct. 667, 30 L.Ed.2d 656, on remand, 457 F.2d 343; Burrage v. Flota Mercante Grancolombiana, S. A., 5 Cir., 1970, 431 F.2d 1229, 1970 A.M.C. 2254.

v. SS Yaracuy, 5 Cir., 1967, 378 F.2d 156.

As the result would depend on a number of variables and would ordinarily call for resolution by the trier of fact, it was crucial that the standard of seaworthiness be adequately and accurately spelled out for the jury in the Court's charge.

### Erroneous Charge

In instructing the jury on the issue of unseaworthiness, the court reiterated the barge owner's position that the method employed in loading the barge was "a standard loading procedure, that the posting of a flagman or assigning a particular person down there to flag him or signal him when this is being done is not necessary. It's not the standard thing that's done; that they followed standard operating procedure throughout. So they argue that this is not such a condition as to render this vessl not reasonably fit for its intended purpose. But if you find that this is the case, then of course you should answer Interrogatory No. 1 'no.'" In a very short time, the jury answered "no" to the basic question of unseaworthiness.[6]

The contention here is that the court's instruction was erroneous.[7] The theory was that in the loading/unloading of the barges, the procedure followed created a continuous condition of unseaworthiness which was the direct cause of the accident. The principal factor in the theory was that the crane operator could not see the pipe he was loading because there was neither a window in the cab of the crane, nor a flagman to signal him. Clearly, these are factors for jury determination. But the instruction regarding standard operating procedure effectively precluded any consideration of this theory except in a very limited way. All the jury was permitted to determine was whether, as barge owner contended, all was done in the usual, accepted, industry-wide manner. If it were, then a "no" answer was categorically mandated.[8] For the charge affirmatively instructed the jury that if it was standard practice not to use a flagman, etc., then this could not amount to unseaworthiness. That was clearly wrong.

Of course, the Judge was right in charging on standard practice of the

---

6. Interrogatory No. 1 asked the jury "Do you find from a preponderance of the evidence in this case that the pipe barge owned by defendant Brown & Root was unseaworthy on April 29, 1969, on the day of the accident in question?"
   "Answer: NO."
   The charge was structured so that a "no" answer made answer to further interrogatories unnecessary.

7. Although the barge owner asserts that defects in the court's instructions were waived, the record clearly reflects an adequate, timely objection:
   "COURT: Gentlemen, I think I have substantially covered all of the requested charges which were made by each one of you, in my charge to the Jury.
   Mr. Atkins, do you have any exceptions to the charge that I have given to the Jury?
   "MR. ATKINS: Your Honor, plaintiff respectfully excepts to the charge because of the fact that the Court stated what appeared to plaintiff's counsel to be something to the effect that if they followed the standard procedure, then they would find that there was no unseaworthiness. And I submit that the Court

should have charged that the standard procedure, even though it was standard for the entire industry, could have been unseaworthy."
   "COURT: All right, let * * * Let the Objection be noted. It's overruled."

8. Interrogatories with a general charge under F.R.Civ.P. 49(a) again prove their usefulness. See In re Double D Dredging Co., Inc., 5 Cir., 1972, 467 F.2d 468. See also Brown, Federal Special Verdicts: The Doubt Eliminator, 1968, 44 F.R.D. 338; and United States Lines v. Williams, 5 Cir., 1966, 365 F.2d 332, 1966 A.M.C. 2418. The error is pinpointed and nothing is left to conjecture as to its impact as would have been the case under an enigma-wrapped-in-a-mystery general verdict for barge owner, since one could never divine whether it was on the basis of no unseaworthiness, lack of proximate cause, or contributory negligence, each of which was in issue.
   As fresh evidence of the utility of this device and the wholly unnecessary drain on limited judicial resources from the failure to exploit it see, Duke v. Hoch, 5 Cir., 1972, 468 F.2d 973.

trade. It is, or may be, evidence of due care or analogous factors bearing on modern day notions of seaworthiness. But what the industry does, or does not do, is not the standard the law imposes. The law may, and often does, demand more exacting conduct. See Stevens v. Seacoast Co., Inc., 5 Cir., 1969, 414 F.2d 1032, 1969 A.M.C. 1911; June T., Inc. v. King, 5 Cir., 1961, 290 F.2d 404, 1961 A.M.C. 1431; Marshall v. Ove Skou Rederi A/S, 5 Cir., 1967, 378 F.2d 193, 1967 A.M.C. 2537; Coleman v. Jahncke Service, Inc., 5 Cir., 1965, 341 F.2d 956, 1965 A.M.C. 535; Davis v. Associated Pipe Line Contractors, Inc., W.D.La., 1968, 305 F.Supp. 1345, aff'd, 5 Cir., 1969, 418 F.2d 920, cert. denied, 1970, 397 U.S. 988, 90 S.Ct. 1119, 25 L.Ed.2d 396. See also Bryant v. Partenreederei-Ernest Russ, 4 Cir., 1964, 330 F.2d 185, 1965 A.M.C. 1207.

Obviously, the error was critical, so a new trial is required on the claim against the barge owner.

Affirmed in part, and reversed and remanded in part.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York et al., 5 Cir., 1970, 431 F.2d 409, Part I.