**Complaint of ALLIED TOWING CORPORATION, as owner of the TANKBARGE ATC 3060, for exoneration from or limitation of liability.**

Civ. A. No. 75–151–N.

United States District Court,
E. D. Virginia,
Norfolk Division.

Aug. 2, 1976.

Morton H. Clark (Vandeventer, Black, Meredith & Martin), Norfolk, Va., for plaintiff.

Sidney H. Kelsey, Arthur C. Ermlich, Ralph Rabinowitz, Alan P. Owens, Gerard P. Rowe, R. Arthur Jett, Jr., C. Arthur Rutter, Jr., Kanter & Kanter, Seawell, McCoy, Dalton, Hughes, Gore & Timms, Norfolk, Va., for claimants.

MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

The Court has held previously that Allied Towing Corporation [hereinafter referred to as "Allied"] is not entitled to exoneration from or limitation of liability as to the claims arising from the explosion in or on one of its barges during repairs to the barge being made by Allied's employees. *Complaint of Allied Towing Corporation,* 409 F.Supp. 180 (E.D.Va.1976). Allied now moves the Court to enter summary judgment in its favor in the pending claims asserted by its employees and the personal representatives of deceased employees who

were injured or killed in the barge explosion.

Allied argues that the Amendments of 1972 to the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C. § 901, et seq. [LHWCA] specifically bar an action by a longshoreman against his employer when the employee is engaged in ship repair services.

Section 905(b) of the LHWCA now provides:

"(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter."

It is undisputed that Allied and its injured employees fall within the definitional provisions of the Act. 33 U.S.C. § 902(3) and (4). The sole issue is whether the employees have a cause of action against the vessel for negligence.[1] The Amendments, which seek to limit the claims against their employers by maritime oriented employees, other than seamen, to recovery under the Act, fail to consider the problem when the employer, who is paying for workmen's compensation, is also the owner of the vessel. The Third Circuit Court of Appeals discussed this problem at length in *Griffith v. Wheeling Pittsburgh Steel Corporation*, 521 F.2d 31 (1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976). After reviewing the legislative history and relevant historical precedents, the Court concluded:

"The vessel, even a vessel which is an employer under the Act, is relieved of liability for negligence of persons engaged in providing stevedoring services, but is not relieved of liability for its own 'owner' occasioned negligence." *Griffith, supra* at 43.

■ The holding in *Griffith* is addressed to stevedoring services but is applicable equally to employees in repair services because the language of Section 905(b) is the same as to both categories of employees. Under the logic of the *Griffith* decision, the Court believes that Allied employees have a cause of action in negligence against their employer in its capacity as owner of the ATC 3060. The Court reaches this result with extreme reluctance. Logic clearly compels a different outcome. The entire thrust of the 1972 Amendments was to strengthen the compensation system for longshoremen. The instant decision permitting longshoremen a cause of action against their employer flies in the face of the statutory compensation system. The conclusion, however, is militated by the draftsmanship of the 1972 Amendments.

Allied asserts that even if the decision in *Griffith* is followed that its employees' cause of action is barred by the repair services proviso in Section 905(b). That section proscribes a cause of action "if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel." 33 U.S.C § 905(b).

---

1. The 1972 Amendments eliminated the injured longshoremen's seaworthiness cause of action against the vessel. 33 U.S.C. § 905(b). *See* G. Gilmore & C. Black, *The Law of Admiralty,* § 6–46 to 57 (2d ed. 1975).

On its face, the statute establishes a two-fold test to qualify for this exclusion. First, the injured employee must have been employed for the purpose of repair services. Second, the negligence must have been that of employees engaged in providing repair services. Without consideration of whether the record as it now stands would substantiate that those claimants sought to be denied were repairmen, the Court will consider the second requisite, that is, were the employees who caused the explosion employed for the purpose of repair services.

In its opinion denying limitation of liability, the Court held that the causes of the explosion of the ATC 3060 were within the privity and knowledge of the supervising personnel of Allied. Specifically, the Court concluded that Allied: (1) should have procured a gas free certificate prior to commencing repair; (2) should have provided for a systematic method to secure gas free certifications or to assure the gas freeing of a vessel before hot work was commenced; and (3) should not have permitted the ATC 3060 to transport a grade of fuel that it was not certified to carry pursuant to Coast Guard regulations.

■ For the employees to have a cause of action, it must be established that ship occasioned negligence occurred and was a cause of the injury. The Court believes that the first two causes fall within the ambit of repair services as the term is employed in Section 905(b) and, therefore, meet the exclusion. The Court must focus on the third cause and ascertain whether this occurred as a result of "owner" occasioned negligence and was not excluded as a ship repair function. Research has not produced any authorities delineating the scope of owner occasioned negligence. In light of the compensation system available to employees, the breadth of liability should be extremely narrow. In the instant case, the ATC 3060 in and of itself was not negligent or unseaworthy [2] before taking on the cargo. However, when Grade C crude oil cargo was lightered to the ATC 3060, which was certified to carry only Grade D oil, the ship fell from its status of nonculpability. Decisional precedents establish that a vessel is responsible for cargo which causes harm or creates an unseaworthy condition.[3] *Gutierrez v. Waterman Steamship Corp.*, 373 U.S. 206, 213, 83 S.Ct. 1185, 10 L.Ed.2d 297 (1962).[4] The Supreme Court also stated in *Gutierrez* that "[t]here is no distinction in admiralty between torts committed by the ship itself and the ship's personnel while operating it . . . ." *Id.* at 210, 83 S.Ct. at 1188. Under this standard, it appears that Allied in its capacity as shipowner is liable for creating a negligent condition which was a cause of the explosion. Allied's negligence does not have to be the sole proximate cause to impute liability. *Spinks v. Chevron Oil Company*, 507 F.2d 216 (5th Cir. 1975).[5] *See generally Shellman v. United States Lines, Inc.*, 528 F.2d 675 (9th Cir. 1975); *Dodge v. Mitsui*, 528 F.2d 669 (9th Cir. 1975); *Edmunds v. Compagnie*, No. 74–339–N (E.D.Va.1976).

■ The Court's findings of fact and conclusions of law are res judicata or collateral

---

2. The Court is mindful that Section 905(b) eliminated the duty of seaworthiness. Nevertheless, from a practical perspective, negligence as employed in Section 905(b), frequently does not differ in its essence from seaworthiness. *See* G. Gilmore & C. Black, *The Law of Admiralty*, 452–453 (2d ed. 1975).

3. The Court reiterates that the discussion relative to seaworthiness is important only in that it is frequently interchanged with negligence and often both are derived from the same source.

4. The Supreme Court's decision in *Victory Carriers, Inc. v. Law,* 404 U.S. 202, 92 S.Ct. 418, 30 L.Ed.2d 383, *rehearing denied* 404 U.S. 1064, 92 S.Ct. 731, 30 L.Ed.2d 753 (1971) does not alter the Court's reliance on *Gutierrez*. The *Victory Carriers* decision merely delineated the extent of federal maritime jurisdiction for land based injuries.

5. The Court is cognizant that this is a Jones Act case but believes that the concept is also applicable in the instant circumstances. *See* G. Gilmore & C. Black, *The Law of Admiralty*, 452–453 (2d ed. 1975). *See contra* Comment, Negligence Standards under the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act: Examining the Viewpoints, 21 Villanova L.Rev. 244 (1975).

estoppel in any subsequent proceedings. *The Matter of Double D Dredging Company, Inc.,*[6] 467 F.2d 468 (5th Cir. 1972); *cf. Guillot v. Cenac Towing Co.,* 366 F.2d 898, 909 (5th Cir. 1966); *Pershing Auto Rentals, Inc. v. Gaffney,* 279 F.2d 546 (5th Cir. 1960). In *Double D Dredging Company,* the Court would not permit a shipowner to admit that the accident occurred in navigable waters and decedent was a seaman-crew member within the meaning of the Jones Act in the limitation proceedings and in a subsequent jury trial deny both admissions. The Fifth Circuit opined that "it is unimportant whether this [shipowner being estopped] is because of the prior specific pleadings or the holding of navigability implicit in the Court's denial of limitations on the merits rather than on the absence of admiralty jurisdiction." *The Matter of Double D Dredging Company, supra* at 469 [footnotes omitted]. Clearly, the loading of impermissible cargo was not a ship repair function and, therefore, is not excluded under § 905(b).

The Court, therefore, finds the vessel guilty of non-excluded owner occasioned negligence and DENIES the Motion for Summary Judgment.

Finally, the Court dissolves the restraining Order entered April 10, 1975, thus permitting claimants to proceed with the actions and repair to the forum of their choice. *See Fecht v. Makowski,* 406 F.2d 721, 722 (5th Cir. 1969). *See also Narragansett Fishing Corp. v. F/V Bob n Barry,* 425 F.2d 733, 734 (1st Cir. 1970).

---

**6.** This decision has not been cited by any other court and has been questioned by a leading treatise. G. Gilmore & C. Black, *The Law of Admiralty,* § 10–19, 872–873. One of the problems posed by the treatise appears here. The limitation proceedings and the employees' suits have not been consolidated. The failure to consolidate does not alter the result.