Calvin RICHARDSON and Thywenston G. Swain, Plaintiffs,

v.

NORFOLK SHIPBUILDING AND DRY-DOCK CORPORATION, Defendants.

Civ. A. No. 79–245–N.

United States District Court, E. D. Virginia, Norfolk Division.

Sept. 24, 1979.

Ralph Rabinowitz, Rabinowitz, Rafal & Swartz, Norfolk, Va., for plaintiffs.

John B. King, Jr., Vandeventer, Black, Meredith & Martin, Norfolk, Va., for defendants.

MEMORANDUM OPINION

CLARKE, District Judge.

Plaintiffs Richardson and Swain filed a Complaint in this Court on March 1, 1979, seeking damages against Norfolk Shipbuilding and Drydock Corporation (hereinafter "Norfolk Shipbuilding") for personal injuries sustained on May 4, 1978, while they were sandblasting a Navy vessel undergoing repair at defendant's shipyard. The Complaint asserts alternative causes of action against Norfolk Shipbuilding: (1) an action as seamen under the Jones Act, 46 U.S.C. § 688; and (2) if plaintiffs are not considered to be seamen, an action for "shipowner's occasioned negligence which proximately contributed to plaintiffs' injuries." Complaint at ¶¶ 1, 6. The Court's jurisdiction is based upon 28 U.S.C. § 1333 (admiralty) and 28 U.S.C. § 1331 (federal question).

This matter is now before the Court on Motions for Summary Judgment filed pursuant to Rule 56, Federal Rules of Civil Procedure, by plaintiffs and defendant. The plaintiffs seek summary judgment against the defendant on the issue of liability, leaving to the jury the determination of the amount of damages. Plaintiffs assert that undisputed facts show that their injuries were caused by the negligence of a crane rig operator of a derrick barge, which is a vessel as a matter of law. Accordingly, Norfolk Shipbuilding, the vessel owner, is liable as a matter of law for the negligence of its employee operating the crane. Norfolk Shipbuilding has responded to plaintiffs' Motion for Summary Judgment by filing its own Motion for Summary Judgment contending that, as a matter of law under the undisputed facts of the case, plaintiffs are not entitled to recover on either of the two asserted causes of action because (1) plaintiffs are not seamen within the meaning of the Jones Act, and (2) plaintiffs are barred by the Longshoremen and Harbor Workers Compensation Act (LHWCA), 33 U.S.C. § 905, from bringing an action for the "shipowner's occasioned negligence." Defendant also has filed a Motion to Strike plaintiffs' demand for a jury trial, if the Court determines that plaintiffs cannot pursue their action under the Jones Act but can continue with their negligence action against defendants. Before addressing the merits of these motions, the facts of the case will be briefly reviewed.

I. *Factual Background*

The plaintiffs, Calvin Richardson and Thywenston G. Swain, were employed as sandblasters by Norfolk Shipbuilding on May 4, 1978, the day that the alleged injuries occurred. Plaintiffs did not have a permanent job assignment but received their assignments when they reported to work each day. Upon reporting to work at the paint shop of Norfolk Shipbuilding that day, the plaintiffs were assigned to work on board the U.S.S. NASHVILLE, a Navy vessel undergoing repair at the shipyard. After reporting aboard the NASHVILLE, Richardson and Swain were advised that their sandblasting work was to be done on the angles underneath the flight deck. Since the NASHVILLE was not in drydock and since the sandblasting task was to be performed on the offshore side of the vessel (away from the pier side), it was necessary for a crane to hoist Richardson and Swain to the job in a workers' tray. They were to perform their work while suspended in the tray alongside the NASHVILLE. The crane used for this purpose was a yard derrick moored alongside the NASHVILLE and owned by defendant Norfolk Shipbuilding.

The yard derrick in question consists of a crane mounted on a flat barge. The barge is not self-propelled but must be moved by tug from place to place. The crane on the barge is operated by the same individuals who operate shorebased cranes, which perform some of the same functions as the yard derricks. There is no indication that the yard derricks have regular assigned crews, and the defendant contends that the crane operators on both the shorebased and the yard derrick cranes are ship repairmen rather than seamen. The crane operator of the yard derrick on May 4, 1978, was M. A. Fedock, an employee of Norfolk Shipbuild-

ing, assigned to the crane department at the shipyard.

Richardson and Swain, with their sandblasting equipment, entered the workers' tray from the flight deck of the NASHVILLE. The tray had been lifted by the crane to the flight deck, and at no time did either plaintiff come in contact with the barge itself, other than being in the tray. At all times during this maneuver, the yard derrick itself was moored and not being moved to different locations.

While plaintiffs were engaged in the sandblasting operation alongside the NASHVILLE, the tray fell, struck the deck of the barge, and allegedly injured the plaintiffs. The crane operator, in his deposition of July 18, 1979, indicated that he was responsible for engaging the brake of the crane; that although he thought the brake was engaged, it was not; and that the tray fell because the brake was not properly engaged. Dep. of Michael Andrew Fedock at 10 (lines 19–25), at 11 (lines 1–22, 25), at 12 (lines 1–4). Plaintiffs received compensation for their alleged injuries under the LHWCA.

On the basis of the foregoing facts, as well as the affidavits and briefs filed, the Court will first examine whether plaintiffs are seamen under the Jones Act, thereby entitling them to relief under that Act. The Court will then determine whether plaintiffs can bring an action for shipowner's negligence. If plaintiffs can maintain the negligence action, the Court will then rule on plaintiffs' Motion for Summary Judgment, and if necessary, on defendant's Motion to Strike the demand for a jury trial.

## II. *The Jones Act Claim*

In order to bring a cause of action under the Jones Act, 46 U.S.C. § 688,[1] the plaintiff must be a "seaman." *See, e. g., Whittington v. Sewer Construction Co.,* 541 F.2d 427 (4th Cir. 1976). The Court in *Whittington* delineated the requirements for establishing that an individual is a "seaman" under the Jones Act:

> The term "seaman" when used in a jurisdictional sense refers to one who is a "member of the crew" of a vessel. *South Chicago Coal & Dock Co. v. Bassett,* 309 U.S. 251, 60 S.Ct. 544, 84 L.Ed. 732 (1940). . . . To qualify as a "member of the crew" under the Jones Act one must be more or less permanently attached to a vessel or fleet; he must be one whose duties serve "naturally and primarily as an aid to navigation" in the broadest sense, and the vessel must be in navigation.

541 F.2d at 433, 436 (footnotes omitted).

Under the above jurisdictional test, plaintiffs do not qualify as "seamen." They were not more or less permanently attached to a vessel, either the yard derrick or the NASHVILLE. Rather, they were employed by the shipyard as sandblasters; they lived, ate, and slept on shore in their own residences; and they received their work assignments on a daily rotational basis. The law requires more than the temporary relationship between the vessel and the worker which existed in the present case. *See, e. g., Whittington v. Sewer Construction Co., supra* at 436 (laborer assigned to work on barge for day with primary responsibility for demolition of bridge not a "seaman"); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31, 37 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976) (individual assigned on a temporary, daily basis not a "seaman"); *Burns v. Anchor-Wate Co.,* 469 F.2d 730, 733 (5th Cir. 1972) (individual neither took meals nor slept on barges and performed no function necessary to operate barge); *Thibodeaux v. J. Ray McDermott & Co.,* 276 F.2d 42, 46 (5th Cir. 1960) (welder who lived, ate, and slept at home not a "seaman"). *See also Senko v. La Crosse Dredg-*

---

1. This section states in pertinent part:

Any seaman who shall suffer personal injury in the course of his employment may, at his election, maintain an action for damages at law, with the right of trial by jury, and in such action all statutes of the United States modifying or extending the common-law right or remedy in cases of personal injury to railway employees shall apply . . . ..

ing Corp., 352 U.S. 370, 372, 77 S.Ct. 415, 1 L.Ed.2d 404 (1957); Norton v. Warner Co., 321 U.S. 565, 573, 64 S.Ct. 747, 88 L.Ed. 931 (1944).

Since the facts of this case clearly show that the plaintiffs did not have the requisite permanent attachment to a vessel to qualify, as a matter of law, as "seamen" under the Jones Act, the Court need not examine the other two requisites delineated in Whittington v. Sewer Construction Co., supra. However, the Court does note that the facts also show that plaintiffs were not aboard the yard derrick barge, or the NASHVILLE, to aid in its navigation. They were performing sandblasting and repair tasks to the NASHVILLE from the suspended tray on the crane of the yard derrick when they were allegedly injured, and they were in no way connected with the navigation of a vessel.[2] See, e. g., Whittington v. Sewer Construction Co., supra; Griffith v. Wheeling Pittsburgh Steel Corp., supra; Burns v. Anchor-Wate Co., supra.

### III. Shipowner's Negligence Claim Under the LHWCA

Plaintiffs received compensation for their alleged injuries under the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 et seq. Norfolk Shipbuilding contends that such compensation bars this action against them because § 5 of the Act, 33 U.S.C. § 905, provides:

(a) The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death . . .

(b) In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

Plaintiffs, however, assert that they can still sue their employer, Norfolk Shipbuilding, despite the fact that they received compensation benefits under the LHWCA, because the alleged negligence of defendant was "vessel owner occasioned negligence" and because § 905(b) specifically permits recovery for such negligence. Moreover, plaintiffs rely upon the case authority which permits an action against the compensating employer when "vessel owner occasioned negligence" is involved. In re Al-

---

**2.** The term "in navigation" has been broadly construed to encompass a vessel "as an instrument of commerce or transportation on navigable waters." Griffith v. Wheeling Pittsburgh Steel Corp., 521 F.2d 31, 37 (3d Cir. 1975), cert. denied, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976), citing 2 M. Norris, The Law of Seamen § 668 at 301 (3d ed. 1970). The vessel does not need to be moving or involved in actual navigation; it just needs to be on navigable waters. Id. Under this broad construction, the yard derrick in question, assuming it is a vessel, see text of opinion infra, was "in navigation." The Court does not, however, need to consider this fact further since the plaintiffs do not meet the other two requirements to qualify as "seamen" under the Jones Act.

lied Towing Corp., 416 F.Supp. 1207 (E.D. Va.1976), aff'd sub nom., Allied Towing Corp. v. Tatem, 580 F.2d 702 (4th Cir. 1978); Smith v. M/V Captain Fred, 546 F.2d 119 (5th Cir. 1977); Griffith v. Wheeling Pittsburgh Steel Corp., supra. See Edmonds v. Compagnie Generale Transatlantique, —— U.S. ——, 99 S.Ct. 2753, 61 L.Ed.2d 521 (1979). Accordingly, since this Court in In re Allied Towing Corp., supra, already has recognized that the compensating employer can be sued for vessel occasioned negligence, it need only determine whether the present action falls within this narrow exception.[3]

■ In order "to have a cause of action, it must be established that ship occasioned negligence occurred and was a cause of the injury." In re Allied Towing Corp., supra at 416 F.Supp. 1207, 1209. The Court agrees with plaintiffs that the yard derrick barge in question is a vessel as a matter of law. See e. g., Ellis v. United States, 206 U.S. 246, 249, 27 S.Ct. 600, 51 L.Ed. 1047 (1907) (dredge and scows); Ex parte Easton, 95 U.S. 68, 24 L.Ed. 373 (1877) (canal barge); Summerlin v. Massman Construc-

tion Co., 199 F.2d 715 (4th Cir. 1952) (derrick barge); Jeffrey v. Henderson Brothers, 193 F.2d 589 (4th Cir. 1951) (dredge barge). Moreover, Norfolk Shipbuilding admittedly owns the yard derrick, leaving only a determination of whether the alleged negligence of the crane operator is imputable to the vessel and thereby to its owner, Norfolk Shipbuilding.[4]

■ While § 905(b) refers to "negligence of a vessel," the term "vessel" is defined in the LHWCA, 33 U.S.C. § 902(21), as follows:

The term "vessel" means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member.

Therefore, under the Act, if the crane operator was functioning as a crew member of the vessel, as plaintiffs contend,[5] by definition his negligence is that of the vessel,[6]

---

**3.** In enacting the 1972 Amendments to the LHWCA, Congress increased the benefit levels and sought to return the focus of the Act toward compensation. Accordingly, this Court has stated: "In light of the compensation system available to employees, the breadth of liability should be extremely narrow." In re Allied Towing, supra at 416 F.Supp. 1207, 1209. Moreover, the increased benefits narrowed the cause of action against the vessel, eliminating suits by harbor workers for breach of the duty of seaworthiness and confining the action against the vessel to one for negligence. See Id. at 1208 n. 1. See also H.R.Rep. No. 1441, 92d Cong., 2d Sess., reprinted in [1972] U.S. Code Cong. & Admin.News, pp. 4698, 4703:

Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. . . .

**4.** The action under § 905(b) appears to be one in rem against the vessel. The term vessel, however, is defined in § 902(21) to include the vessel owner. Therefore, the use of the phrase

in § 905(b), "against [the] vessel," evidently does not preclude an in personam action against the vessel owner. G. Gilmore & C. Black, The Law of Admiralty, 450 (2d ed.1975); 1A Benedict on Admiralty § 115 (7th ed.1977). However, whether the action is one in rem or in personam does not present a problem which warrants further consideration in this case at this time.

**5.** Plaintiffs have not alleged that the crane operator was serving in any capacity on the barge other than as a crew member. The Court notes, however, that Mr. Fedock was not serving in any of the other capacities covered by the definition of vessel in § 902(21); in particular, he was not the "operator" of the barge, only of the crane on the barge. The facts show that the barge was not self-propelled but was moved to different locations by tug. Therefore, Mr. Fedock could not be the "operator" of the barge itself.

**6.** See also Gutierrez v. Waterman Steamship Corp., 373 U.S. 206, 210, 83 S.Ct. 1185, 1188, 10 L.Ed.2d 297 (1962), in which the Supreme Court stated that "[t]here is no distinction in admiralty between torts committed by the ship itself and the ship's personnel while operating it . . . ."

and the vessel's owner, Norfolk Shipbuilding, is liable for the vessel occasioned negligence.[7] On the other hand, if the crane operator was providing repair services and not serving as the vessel's crew member, then § 905(b) specifically disallows a negligence action against the vessel "if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel."[8] In effect, then the vessel is liable only for its own negligence and not that of those providing repair, ship building, or stevedoring services. *See, e. g., Griffith v. Wheeling Pittsburgh Steel Corp.,* supra at 521 F.2d 31, 40–44; *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505, 507 (2d Cir. 1976).

■ In determining whether Mr. Fedock, the crane operator, was serving as a ship repairman or a crew member on the yard derrick, it is necessary again to apply the test of whether the worker in question had a more or less permanent connection with a vessel in navigation and whether the worker was aboard primarily to aid in navigation. *See, e. g., Bellomy v. Union Concrete Pipe Co.,* 297 F.Supp. 261 (S.D.W.Va.1969), *aff'd,* 420 F.2d 1382 (4th Cir. 1970), *cert.*

denied, 400 U.S. 904, 91 S.Ct. 144, 27 L.Ed.2d 142 (1970).[9]

■ In applying this test to Mr. Fedock, it is clear that he was not a crew member of the yard derrick as plaintiffs have contended. He did not have a more-or-less permanent connection to the yard derrick; he was an employee of the crane department at Norfolk Shipbuilding with duties to operate both shorebased and yard derrick barge cranes. Fedock did not have a regular assignment to the yard derrick in question, but rather he had only operated the crane since 8:00 a. m. on the morning of the accident. Dep. of Michael Andrew Fedock at 5–6. Moreover, he was not aboard to aid in navigation;[10] rather, he was aboard to operate the crane. In effect, then, Fedock's responsibilities on the yard derrick related to the repair work being performed on the U.S.S. NASHVILLE; he operated the crane that held and maneuvered the sandblasters, thereby enabling them to perform the repairs to the NASHVILLE. The repairs to the off-shore side of the NASHVILLE could not have been performed without the crane operator, who was a ship

---

7. *See note 4 supra.*

8. This Court recognized the two-fold test established by the statute in order for an action to be proscribed because of ship repairer negligence: "First, the injured employee must have been employed for the purpose of repair services. Second, the negligence must have been that of employees engaged in providing repair services." *In Re Allied Towing Corp., supra* at 416 F.Supp. 1207, 1209. In the present case, the injured employees were clearly employed for the purpose of providing sandblasting repair services to the U.S.S. NASHVILLE. *See* part II of this Opinion, *supra.* Therefore, the Court need only further consider whether the crane operator was "engaged in providing repair services."

9. Application of this test under the LHWCA by the courts has usually been to determine whether an individual is covered by the Act in terms of whether he is an "employee" under the Act and thereby entitled to compensation for his injury. "Employee" is defined in 33 U.S.C. § 902(3):

   The term "employee" means any person engaged in maritime employment, including any longshoreman or other person engaged in longshoring operations, and any harbor-

worker including a ship repairman, shipbuilder, and shipbreaker, but such term does not include a master or member of a crew of any vessel, or any person engaged by the master to load or unload or repair any small vessel under eighteen tons net.

By definition, then, the term "employee" under the LHWCA includes a repairman and excludes a crewman. Accordingly, the courts have applied a uniform test, applicable to both the Jones Act and the LHWCA, to determine an individual's status as a harbor worker or a crewman/seaman. *See, e. g., Bellomy v. Union Concrete Pipe Co., supra.* Although this test is being applied in a different context in this case—to determine a worker's status for purposes of § 905(b)—the definition of "employee" in § 902(3) is applicable to § 905(b), and the same and only prevailing test to determine a worker's status is applicable in both contexts.

10. Under the broad definition of "in navigation," the yard derrick barge in question was "in navigation." *See* note 2 *supra.* However, since the crane operator does not meet the other requisites to qualify as a crew member of the barge, the determination of a vessel in navigation is not necessary.

repairman like the plaintiffs.[11] Moreover, the Benefits Review Board, an administrative board charged with interpreting the LHWCA in relation to compensation claims asserted thereunder, recently has held that a crane operator on a derrick barge was a harbor worker and not a crew member of the barge. *Crauthers v. Northwestern Construction Co.*, 9 BRBS 880 (1979).[12]

Therefore, if the crane operator is not a crewman, and does not fall within any of the categories set forth in the definition of vessel in 33 U.S.C. § 902(21) of the LHWCA,[13] his alleged negligence cannot be imputed to the vessel, thereby constituting vessel occasioned negligence as the basis of a cause of action. Furthermore, as the Court already has articulated, if the crane operator is a harbor worker serving in a ship repairer function, 33 U.S.C. § 905(b) of the Act specifically bars an action for ship repairer negligence. Since plaintiffs cannot bring an action against the compensating employer under § 905(a) and since § 905(b)

excludes an action against the vessel for ship repairer negligence, the Court GRANTS summary judgment for the defendant.

■ The Court does further note, however, that while this case involves an unusual factual situation which does not fit precisely into the language of the statute precluding an action for ship repairer's negligence because the vessel undergoing or receiving the actual repair services did not cause the alleged injuries,[14] the legislative history to the 1972 Amendments to the LHWCA clearly shows that Congress only intended to provide longshoremen employed directly by a vessel with a right to maintain an action against that vessel for injuries due to the negligence of the vessel's crew or unsafe conditions on board the vessel, not for the negligence of independent stevedores or ship repairmen. *See Griffith v. Wheeling Pittsburgh Steel Corp., supra* at 521 F.2d 31, 40–45; *Napoli v. Hellenic Lines, Ltd., supra* at 507.[15] As already indi-

11. *See* note 8 *supra.* Also, plaintiffs received compensation for their injuries under the LHWCA, thereby qualifying as employees under the Act. *See* note 9 *supra* and accompanying text for definition of "employee," which includes "a ship repairman," and for the applicable test to determine coverage of the LHWCA. Since the tests to determine status of an individual as a crew member or a repairman are, in effect, the same under both the Jones Act and the LHWCA, the Court resolved the status of the plaintiffs as repairmen in part II of this Opinion, *supra.*

12. *See* note 9 *supra.*

13. *See* note 5 *supra.*

14. The statute, 33 U.S.C. § 905(b) uses the language "no such action shall be permitted if the injury was caused by the negligence of persons engaged *in providing* ship building or *repair services to the vessel.*" (emphasis added).

15. The House Report states:
   Permitting actions against the vessel based on negligence will meet the objective of encouraging safety because the vessel will still be required to exercise the same care as a land-based person in providing a safe place to work. Thus, nothing in this bill is intended to derogate from the vessel's responsibility to take appropriate corrective action where it knows or should have known about a dangerous condition.

So, for example, where a longshoreman slips on an oil spill on a vessel's deck and is injured, the proposed amendments to Section 5 would still permit an action against the vessel for negligence. To recover he must establish that: 1) the vessel put the foreign substance on the deck, or knew that it was there, and willfully or negligently failed to remove it; or 2) the foreign substance had been on the deck for such a period of time that it should have been discovered and removed by the vessel in the exercise of reasonable care by the vessel under the circumstances. The vessel will not be chargeable with the negligence of the stevedore or employees of the stevedore.

Under this standard, as adopted by the Committee, there will, of course, be disputes as to whether the vessel was negligent in a particular case. Such issues can only be resolved through the application of accepted principles of tort law and the ordinary process of litigation—just as they are in cases involving alleged negligence by land-based third parties. The Committee intends that on the one hand an employee injured on board a vessel shall be in no less favorable position vis a vis his rights against the vessel as a third party than is an employee who is injured on land, and on the other hand, that the vessel shall not be liable as a third party unless it is proven to have acted or have failed to act in a negligent manner such as would render a land-based third party in non-

cated in this Opinion, no allegations or facts support any contention that the crane operator was a crew member or that any unsafe condition existed on board the vessel, such as the brake was not property maintained, repaired, or working. In the present case, the yard derrick was performing a repair function, as was the crane operator. This alleged vessel owner negligence is in effect the operational negligence of the operator of the crane on the derrick barge. The only basis for contending that vessel owner negligence is involved is that the crane which was being used was mounted on a barge rather than on the pier. This is not the type of situation envisioned by Congress in 1972 when it carved out a narrow exception to the general rule that the right to receive compensation is an injured employee's exclusive remedy against his employer in § 905 of the Act.[16]

In summary, the Court GRANTS defendant's Motion for Summary Judgment on both the Jones Act claim and the shipowner's negligence claim. Therefore, it is not necessary for the Court to consider plaintiff's Motion for Summary Judgment on the issue that the crane operator was negligent was a matter of law, leaving only a determination of damages, or to consider defendant's Motion to Strike plaintiffs' demand for a jury trial.

maritime pursuits liable under similar circumstances.

. . . . .

The Committee has also recognized the need for special provisions to deal with a case where a longshoreman or ship builder or repairman is employed directly by the vessel. In such case, notwithstanding the fact that the vessel is the employer, the Supreme Court in *Reed v. S. S. Yaka*, 373 U.S. 410 [83 S.Ct. 1349, 10 L.Ed.2d 448] (1963) and *Jackson v. Lykes Bros. Steamship Co.*, 386 U.S. 731 [87 S.Ct. 1419, 18 L.Ed.2d 488] (1967), held that the unseaworthiness remedy is available to the injured employee. The Committee believes that the rights of an injured longshoreman or ship builder or repairman should not depend on whether he was employed directly by the vessel or by an independent contractor. Accordingly, the bill provides in the case of a longshoreman who is employed directly by the vessel there will be no action for damages if the injury was caused by the negligence of persons engaged in performing longshoring services. Similar provisions are applicable to ship building or repair employees employed directly by the vessel. The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoremen or ship builders or repairmen as apply when an independent contractor employs such persons.

H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S.Code Cong. & Admin.News, pp. 4704–05 (footnotes omitted). For a comprehensive review of the history and background of the 1972 Amendments to the LHWCA, *see Landon v. Lief Hoegh & Co.*, 521 F.2d 756 (2d Cir. 1975), *cert. denied*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976).

**16.** *See* text of H.R.Rep. No. 1441 *quoted in* note 15 *supra.*