John H. SMITH, Plaintiff-Appellant,

v.

M/V CAPTAIN FRED, her engines, boilers, furniture, gear, tackle and apparel, in rem, Defendant-Appellee.

John H. SMITH, Plaintiff,

v.

DELTA IRON WORKS, INC., Defendant-Appellee.

No. 75–1910.

United States Court of Appeals, Fifth Circuit.

Jan. 28, 1977.

Harvey J. Lewis, New Orleans, La., John P. Godfrey, Many, La., for appellant.

Philip E. Henderson, Charles Hanemann, Houma, La., for appellee.

Ross Diamond, III, Mobile, Ala., Harold J. Lamy, New Orleans, La., Sidney L. Ravkind, Mandell & Wright, Houston, Tex., Association of Trial Lawyers of America, Edward I. Pollock, Los Angeles, Cal., Chairman, Amicus Committee, Amicus Curiae Committee for Employee.

E. D. Vickery, Houston, Tex., pro se and Amicus for Employer and Insurance Company.

Benjamin W. Yancey and William E. Wright, New Orleans, La., for Lykes Bros. Steamship Co.

Before COLEMAN, CLARK and TJOFLAT, Circuit Judges.

TJOFLAT, Circuit Judge:

In this appeal we are asked to decide whether the rule of *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), survived the passage of the 1972 Amendments to the Longshoremen's and Harbor Workers' Compensation Act (LHWCA), 33 U.S.C. §§ 901 *et seq.* (Supp. II, 1972). The district court, on stipulated facts, decided in the negative and held that a repairman could not sue the vessel on which he was injured for its negligence as a third party if the owner of that vessel was also his employer. We disagree and reverse.

Since its enactment in 1927, the LHWCA has provided that the liability of an employer "shall be exclusive and in place of all other liability of such employer to the employee. . . ."[1] That this provision in time became but a hollow promise is well known. Following *Seas Shipping Co. v. Sieracki,* 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946), and *Ryan Stevedoring Co. v. Pan Atlantic Steamship Corp.,* 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), the employee could sue the vessel for unseaworthiness and the vessel could then demand indemnity from the stevedore/employer on the theory that it had breached an express or implied warranty of workmanlike performance to the vessel. This procedure in effect made an end run around the exclusive liability provision of the LHWCA.[2]

> Vessels have been held to what amounts to such absolute liability by decisions of the Supreme Court, commencing with *Seas Shipping Co. v. Sieracki,* 328 U.S. 85 [66 S.Ct. 872, 90 L.Ed. 1099] (1946) which held that the traditional seamen's remedy based on the

---

1. Act of March 4, 1927, ch. 509, § 5, 44 Stat. 1426, *now codified at* 33 U.S.C. § 905(a) (Supp. II, 1972).

2. This procedure was explained in more detail by House Report of the 1972 Amendments:

In *Reed v. The Yaka,* 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), the Supreme Court was faced with the situation of the vessel also being the employer of the injured worker. Noting that the LHWCA "must be liberally construed in conformance with its purpose," [3] the Court extended the *Sieracki* and *Ryan* rationale. It held that "it would produce a harsh and incongruous result, one out of keeping with the dominant intent of Congress to help longshoremen, to distinguish between liability to longshoremen injured under precisely the same circumstances because some draw their pay directly from a shipowner and others from a stevedoring company doing the ship's service." *Id.* at 415, 83 S.Ct. at 1353 (footnote omitted).[4]

There can be no doubt that a major purpose of the 1972 Amendments was to eliminate *Sieracki-Ryan* actions. Congress added subsection 905(b) to put substance back into the exclusive liability provision:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.[5]

breach of the vessel's absolute, nondelegable duty to provide a seaworthy vessel was also available to longshoremen and others who performed work on the vessel which by tradition has been performed by seamen. Under the *Sieracki* case, vessels are liable, as third parties, for injuries suffered by longshoremen as a result of "unseaworthy" conditions even though the unseaworthiness was caused, created, or brought into play by the stevedore (or an employee of the stevedore) rather than the vessel or any member of its crew. For example, under present law, if a member of a longshore gang spills grease on the deck of a vessel and a longshoreman slips and falls on the grease a few moments later, the vessel is liable to pay damages for the resulting injuries, even though no member of the crew was responsible for creating the unseaworthy condition or was even aware of it. Furthermore, in the example given above, under the Supreme Court's decision in *Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp.,* 350 U.S. 124 [76 S.Ct. 232, 100 L.Ed. 133] (1956), the vessel may recover the damages for which it is liable to the injured longshoreman from the stevedore which employed the longshoreman on the theory that the stevedore has breached an express or implied warranty of workmanlike performance to the vessel. The end result is that, despite the provision in the Act which limits an employer's liability to the compensation and medical benefits provided in the Act, a stevedore-employer is indirectly liable for damages to an injured longshoreman who utilizes the technique of suing the vessel under the unseaworthiness doctrine. H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S. Code Cong. & Admin. News, pp. 4698, 4702 (footnotes omitted).

3. 373 U.S. at 415, 83 S.Ct. at 1353, *quoting Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 98 L.Ed. 5 (1953).

4. *See also Jackson v. Lykes Bros. Steamship Co.,* 386 U.S. 731, 87 S.Ct. 1419, 18 L.Ed.2d 488 (1967) (state wrongful death action against employer/shipowner *pro hac vice* not prohibited by LHWCA; *Yaka* controls).

5. 33 U.S.C. § 905(b) (Supp. II, 1972). *See also* H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S. Code Cong. & Admin. News, pp. 4698, 4703:

Accordingly, the Committee has concluded that, given the improvement in compensation benefits which this bill would provide, it would be fairer to all concerned and fully consistent with the objective of protecting

The appellees and several amicus curiae argue that this renewed commitment by Congress to the idea of compensation benefits being an employer's sole liability for injuries covered by the LHWCA mandates the conclusion that Congress also sought to do away with *Yaka*-type suits. Their argument·is bolstered by *Cooper Stevedoring Co. v. Fritz Kopke, Inc.*, 417 U.S. 106, 94 S.Ct. 2174, 40 L.Ed.2d 694 (1974). In *Cooper*, an action brought under the LHWCA prior to the 1972 amendments, the Court explained a prior decision, *Atlantic Coast Line R. Co. v. Erie Lackawanna R. Co.*, 406 U.S. 340, 92 S.Ct. 1550, 32 L.Ed.2d 110 (1972), and its interrelation with *Yaka*.[6] The Court there stated, "In other words, even if Erie were negligent, its injured employee was entitled to claim compensation from it under the [LHWCA], and Erie was accordingly entitled to the protective mantel of the Act's limitation-of-liability provisions." 417 U.S. at 115, 94 S.Ct. at 2179.[7] Since section 905(b) now limits actions against the vessel to those based on negligence, it seems to follow that *Yaka* actions, premised as they were on unseaworthiness, are no longer permissible.

It is important to note, however, that the basic problem envisioned in *Yaka* is still present. Why should an employee be treated differently solely because the ship on which he is injured happens to be owned by his employer instead of by a third party? We think that Congress was sympathetic to this problem when it amended the LHWCA.[8] Section 905(b) allows an employee to sue a "vessel" for its negligence. The term "vessel" is defined in the 1972 Amendments to include "said vessel's owner, owner pro hac vice, agent, operator, charterer or bare boat charterer, master, officer, or crew member." 33 U.S.C. § 902(21) (Supp. II, 1972).[9] Our legislators were well aware of the fact that shipowners, owners *pro hac vice* and charterers frequently have their own employees perform tasks covered by the LHWCA, but no special provision was made for that situation.

Our interpretation of the statute is amply supported by its legislative history. Far from expressing an intent to overrule *Yaka* legislatively as it had done with *Ryan* and

the health and safety of employees who work on board vessels for the liability of vessels as third parties to be predicated on negligence, rather than the no-fault concept of seaworthiness. . . .
For a more in depth discussion of the LHWCA and its 1972 Amendments, *see generally Landon v. Lief Hoegh & Co.*, 521 F.2d 756 (2d Cir. 1975), *cert. denied, A/S Arcadia v. Gulf Insurance Co.*, 423 U.S. 1053, 96 S.Ct. 783, 46 L.Ed.2d 642 (1976); *Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31 (3d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *Croshaw v. Koninklijke Nedlloyd, B.V. Rijswijk*, 398 F.Supp. 1224 (D.Or.1975); *Birrer v. Flota Mercante Grancolombiana*, 386 F.Supp. 1105 (D.Or.1974); *Ramirez v. Toko Kaiun K.K.*, 385 F.Supp. 644 (N.D.Cal.1974); *Lucas v. "Brinknes" Schiffahrts Ges.*, 379 F.Supp. 759 (E.D.Pa.1974) (three-judge court).

6. *Atlantic* presented a *Yaka*-type situation where the employee sued his employer qua vessel.

7. *See also* 417 U.S. at 112–13, 94 S.Ct. [2174], at 2178 ("[T]he 1972 amendments to the Harbor Workers' Act re-emphasize Congress' determination that as between an employer and its injured employee, the right to compensation under the Act should be the employee's exclusive remedy."); *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 394 n.11, 90 S.Ct. 1772, 1784, 26 L.Ed.2d 339 (1970) (interpreting LHWCA prior to amendment).

8. This consideration runs counter, of course, to the general scheme of workmen's compensation laws which limit the employer's liability to compensation payments. But we do not find it illogical, as some courts have suggested, for Congress to find the plight of the employee more compelling than that of his employer in this instance. *See Griffith v. Wheeling Pittsburgh Steel Corp.*, 521 F.2d 31, 42 (3d Cir. 1975), *cert. denied*, 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976); *In re Allied Towing Corp.*, 416 F.Supp. 1207, 1208 (E.D.Va.1976).

9. 33 U.S.C. § 902(21) (Supp. II, 1972) provides in full, "The term 'vessel' means any vessel upon which or in connection with which any person entitled to benefits under this chapter suffers injury or death arising out of or in the course of his employment, and said vessel's owner, owner pro hac vice, agent, operator, charter or bare boat charterer, master, officer, or crew member."

*Sieracki,*[10] the House Report demonstrates that Congress intended the *Yaka* rule to survive:[11]

The Committee has also recognized the need for special provisions to deal with a case where a longshoreman or ship builder or repairman is employed directly by the vessel. In such case, notwithstanding the fact that the vessel is the employer, the Supreme Court, in *Reed v. S.S. Yaka,* 373 U.S. 410 [83 S.Ct. 1349, 10 L.Ed.2d 448] (1963) and *Jackson v. Lykes Bros. Steamship Co.,* 386 U.S. 731 [87 S.Ct. 1419, 18 L.Ed.2d 488] (1967), held that the unseaworthiness remedy is available to the injured employee. *The Committee believes that the rights of an injured longshoreman or ship builder or repairman should not depend on whether he was employed directly by the vessel or by an independent contractor.* Accordingly, the bill provides in the case of a longshoreman who is employed directly by the vessel there will be no action for damages if the injury was caused by the negligence of persons engaged in performing longshoring services. Similar provisions are applicable to ship building or repair employees employed directly by the vessel. *The Committee's intent is that the same principles should apply in determining liability of the vessel which employs its own longshoremen or ship builders or repairmen as apply when an independent contractor employs such persons.*[12]

■ We hold, then, that an employee may sue his employer qua vessel if he was injured as a result of the vessel's negli-

gence. We note that the other two circuits which have considered this issue have resolved it as we have. *Napoli v. Hellenic Lines, Ltd.,* 536 F.2d 505 (2d Cir. 1976); *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).[13] Since the district court dismissed this action because the vessel and the employer were one and the same we must reverse and remand for proceedings not inconsistent with this opinion.

REVERSED AND REMANDED.

---

10. See note 5 *supra* and accompanying text.

11. Interesting to note in this connection is that two district courts in dicta reached contrary conclusions. The court in *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402 (E.D. La.1975), stated, "The immediate purpose of this part of the statute [section 905(b)] was to affirm the doctrine of [*Yaka*] . . .." *Id.* at 409. The court in *Lucas v. "Brinknes" Schiffahrts Ges.,* 379 F.Supp. 759 (E.D.Pa.1974), however, opined that "the Yaka case, allowing suit by the longshoreman when directly employed by the vessel, is overruled by providing that the vessel in that circumstance is entitled to the same exclusive liability as the stevedore

to his employees." *Id.* at 766. The *Lucas* dicta has proved to be poor prophesy in light of *Griffith v. Wheeling Pittsburgh Steel Corp.,* 521 F.2d 31 (3d Cir. 1975), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976).

12. H.R.Rep. No. 1441, 92d Cong., 2d Sess., *reprinted in* [1972] U.S. Code Cong. & Admin. News, pp. 4698, 4705 (footnotes omitted) (emphasis added).

13. *See also In re Allied Towing Corp.,* 416 F.Supp. 1207 (E.D.Va.1976); *Fitzgerald v. Compania Naviera La Molinera,* 394 F.Supp. 402, 409 (E.D.La.1975).