STARNES, HUGH E., Associate Judge.
Misener Marine Construction Co. (Misener) was the contractor for certain work on a bridge over the Peace River. Misener subcontracted certain work on the pilings to Southport Marine, Inc., (Southport) by written agreement. The subcontract agreement included the lease of a barge, a concrete truck with an operator, and a tug boat with an operator; all to be furnished by Misener to Southport. Forest Filbert operated the concrete truck and was injured while operating a winch on the barge. Filbert sued Misener and Southport under the Jones Act (46 U.S.C. section 688) and related causes of action alleging negligence in failing to provide a safe place to work, in failing to keep the winch in proper repair and in providing a vessel which was unsea-worthy. Both Misener and Southport filed cross claims for indemnity. The trial court granted a pre-trial motion by Southport by finding that Filbert was not an employee of Southport. Before trial both defendants settled with Filbert, each contributing one-half of the stipulated sum; both reserved their rights to prosecute their pending cross claims.
After a trial on the cross claims, the trial court found:
(1) Filbert was not a “seaman” (thus, eliminating applicability of the Jones Act).
(2) The vessel was not “unseaworthy”.
(3) That neither Misener nor Southport was negligent; that Filbert’s injury was caused by his own carelessness.
(4)That neither defendant was entitled to recover from the other.
Both parties have appealed the trial court’s decision.
Misener argues that an indemnity clause in the subcontract entitles it to a recovery from Southport for its contribution to the settlement as well as the cost of its defense of Filbert’s claim, while Southport maintains it is entitled to indemnification on common law indemnity principles.
Misener’s claim for indemnity arises strictly from the contract.
The trial court found that the injury was caused entirely by Filbert’s own negligence, with no fault attributed to either Misener or Southport.
Misener’s claim for indemnity can be decided by determining the logical meaning and intent of the contract; this is the principal rule of contract interpretation and applies equally to an indemnity contract as to other forms of contract. J. A. Jones Construction Co. v. Zack Co., 232 So.2d 447 (Fla.3rd DCA 1970). The indemnity clause at issue here protects Misener against “all claims . . . based upon or arising out of damages or injury to persons . sustained in connection with the performance of this Subcontract . . ..” Since Filbert was an employee furnished by Mi-sener to perform services which were Mi-sener’s duty under the lease agreement, the services did not arise under the subcontract duties of Southport. The obvious and logical intent of the indemnity clause was to have Southport reimburse Misener for any loss sustained by Misener where injury to person or property arose out of duties to be performed by Southport. The very same agreement which contained the indemnity clause also contained Misener’s promise to furnish the employee who sustained the injuries, and (as the trial court found) caused the injury. Thus, the only reasonable interpretation of the subcontract as a whole would be that Southport was not to be responsible for loss occurring to Misener from Misener’s duty under the lease clause.
*DCCCXXXIX Misener places its argument for indemnity upon two premises: (1) the existence of an indemnity clause, and (2) the trial court’s finding of its lack of negligence as compared to Filbert’s claim. Misener has shown no undisputed facts, nor has it referred us to any finding of the trial court which demonstrates that the injury arose in the context of Southport’s duties. Implicit in the trial court’s ruling is the contrary fact — that the injury arose from Misener’s performance of its own duties under the lease agreement contained within the subcontract.
Misener next claims that whether or not it should receive reimbursement for its portion of the settlement paid to Filbert, Southport should pay the costs of defense of Filbert’s claim. The indemnity clause does contain language providing that Southport had a duty to defend Misener, if requested, as to any claim to which indemnity applies. Misener had originally tendered the defense of Filbert’s claim to Southport. Misener bottoms its claim as to cost of defense on Zack Co., supra and Stephens v. Chevron Oil Company, 517 F.2d 1123 (5th Cir. 1975). Both of these cases involved indemnity claims for expenses of defense by an indemnitee who had successfully defended the claim of a third party that the indemnitee was negligent. The Zack Co. case involved a claim by a building owner against the contractor and a roofing and siding subcontractor for damage to the roof and siding of the building (an airplane hangar) occasioned by a hurricane. An indemnity clause in the subcontract obligated the subcontractor to indemnify the contractor for damages arising from “accidents”. The contractor successfully defended the claim and then sought recovery against the subcontractor for the cost of defense. The trial court denied recovery. On appeal this ruling was reversed. The appellate court found the hurricane was an “accident” and thus the claim was covered by the indemnity agreement. The contractor and subcontractor had stipulated that the owner’s claim was based upon the negligence of the subcontractor. The court then found that the nature of the claim, not who won or lost, was the criterion for determining liability of the indemnitor for expenses of suit. Since the claim alleged negligence of the subcontractor and loss by accident, the indemnity as to suit expenses applied.
In Stephens, Chevron had entered into a contract with Axelson, Inc., which contained an indemnity clause in favor of Chevron. Stephens, an employee of Axel-son, was injured while stepping from a Chevron boat to a Chevron dock. He sued Chevron, alleging Chevron alone was negligent because the boat and wharf were slick with oil. Axelson refused Chevron’s tender of the defense; a jury subsequently found Chevron was not negligent. Chevron then sought reimbursement for the expenses of its defense. The Fifth Circuit held that Chevron was entitled to reimbursement for defending Stephen’s claim even though there would have been no right to reimbursement if the claim had been successful because the indemnity clause would not have protected against loss occasioned by Chevron’s own negligence. Acknowledging that such a rule allows an indemnitor to determine its responsibility only by hindsight and that there probably was a conflict of interest in the indemnitee providing the defense, the court noted that the rights were contractual in nature and that these collateral problems were not to be judicially resolved.
Neither of the foregoing cases apply to the instant case. Zack Co. involved a claim of pure vicarious liability on the part of the contractor for the acts of its subcontractor. The pleadings here delineating Filbert’s claim contain no clear statement of similar liability. It should again be noted that Misener, not Southport, furnished the equipment on which Filbert was injured.
In Stephens the employee injured was that of Axelson, the indemnitor, while in this case employee injured was that of Mi-sener the indemnitee. Moreover, the court specifically based its decision on the claim having arisen from the work to be done by Axelson. Again, in this case the claim arose through the work of an employee of *DCCCXL the party seeking indemnification and thus does not arise from the work and duty of the indemnitor (Southport).
The final issue to be resolved is Southport’s claim for indemnity based upon common law principles. Essentially, South-port argues that since Filbert was Misener’s employee, his negligence (found by the trial court to be the sole cause of the injury) should be imputed to Misener. Since the trial court found no negligence on the part of Southport, Southport argues that the definition of common law indemnity set forth in Stuart v. Hertz Corp., 351 So.2d 703 (Fla.1977), entitles it to reimbursement for the share of the Filbert settlement it paid. Southport’s claim is thus necessarily based upon Filbert’s negligence being imputed to Misener. Without such imputation South-port’s claim fails.
In pursuing their arguments on this issue, the parties proceed by point and counterpoint through a maze of case law and Federal legislation involving maritime principles.
The stage is set by the trial court’s finding that Filbert was not a “seaman”, and thus that the Jones Act did not apply. This means he would be a “longshoreman” subject to a separate body of Federal statutory law and cases interpreting it.
First, Southport seeks to claim under the maritime doctrine of “implied warranty of workmanlike performance”. If this theory applies Southport would be entitled to indemnity from Misener because of the negligence of Misener’s employee. Pennsylvania Railroad Company v. McAllister Brothers, Inc., 137 F.Supp. 788 (S.D.N.Y.1956).
Misener counters with a history of the Longshoreman and Harbor Worker’s Compensation Act[1] which originally provided (in section 905) that the liability for compensation provided for under the Act to the employee against his employer is exclusive and in place of all other liability of the employer to anyone entitled to recover damages on account of the injury. Subsequent case law emasculated this provision and allowed the longshoreman to sue the “vessel”. The Act defines “vessel” as including not only the vessel itself but also its owner and any lessee or charterer.[2] Thus, both Misener and Southport are included under the statutory definition of “vessel”. The barge on which Filbert was injured is also the “vessel”. The theory on which the case law allowed the longshoreman to sue the “vessel” was that of “implied warranty of seaworthiness”. Case law provided that the “vessel” could then sue the longshoreman’s employer on the theory of an implied duty of the employer to furnish workmanlike performance to the “vessel”. These theories were based upon contract rather than tort and allowed an “end run” around the Act by permitting the employee to sue the “vessel”, which could then sue the employer, who would be liable for damages beyond the compensation provided for in the Act. Seas Shipping Company v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1046). Ryan Stevedoring Company, Inc. v. Pan-Atlantic Steamship Corporation, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956).
This circuitous Ryan — Sieracki run around the statutory language was in turn abrogated in 1972 by an amendment to the Longshoreman and Harbor Worker’s Compensation Act which purported to remove any indemnity cause of action based on tort or contract against the injured longshoreman’s employer.[3] Another vestige of Ryan—Sieracki still remained, however. In Reed v. The Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L.Ed.2d 448 (1963), an employer who also owned the vessel was sued by an injured longshoreman. Recovery was allowed as an extension of Ryan — Sieracki, shortcutting the previous circuitous route to employer liability through a third party. Thus, the longshoreman could sue his employer direct, if the employer was also the owner of the vessel. Subsequent to the *DCCCXLI 1972 amendment it has been held that the Yaka reasoning was not superseded by the amendment, so that even though the circuitous Ryan — Sieracki type recovery against the employer was eliminated, a Yaka action directly against an employer who also owned the vessel was not. Smith v. M/V Captain Fred, 546 F.2d 119 (5th Cir. 1977).
The net result of this history is that the circuitous actions by the longshoreman against the vessel, and then by the vessel against the longshoreman’s employer have been eliminated. This removes any basis for the argument proffered by Southport under Pennsylvania Railroad Company, supra.
Southport rejoins, however that the reasoning of the M/V Captain Fred, supra, should allow it to seek indemnity from Mi-sener because it appears to resuscitate Ryan —Sieracki. The only cause of action the M/V Captain Fred allows, however, is for the longshoreman to sue an employer who is also the vessel owner. That cause of action is not available to a third party, who is specifically prohibited from suing the employer by section 905(b) in the 1972 amendment. The Act now relieves an employer who is also a vessel owner from liability for longshoreman negligence “ . . . thus preventing the imposition of liability on the vessel on some respondeat superior . basis”. Griffith v. Wheeling Pittsburgh Steel Corporation, 521 F.2d 31, 40 (3rd Cir. 1975).[4] The foregoing clause states exactly what Southport attempts to do through its claim for common law indemnity here. The 1972 amendment prohibits it from doing so.
In summary, we reject Misener’s argument on its claim for contractual indemnity because of the circumstances surrounding the contract and the provisions of the contract itself, read in its entirety. Likewise, we reject Misener’s claim for defense costs on the same basis. Because of this reasoning it is unnecessary to consider any application of maritime law as to Misener’s claim. We reject Southport’s argument on its claim for common law indemnity based upon the express language contained in the Longshoreman and Harbor Worker’s Compensation Act prohibiting indemnity claims by the vessel as a third party against a longshoreman’s employer.
AFFIRMED.
HOBSON, A. C. J., and OTT, J., concur.

.Act of March 4, 1927, Ch. 509, 44 Stat. 1426, now codified at 33 U.S.C. section 901, et seq. (Supp. II, 1972).

. 33 U.S.C., section 902(21).

. 33 U.S.C., section 905(b).

. In Griffith the longshoreman’s employer was also the owner pro haec vice. The court recognized that the term “vessel” under the Act includes the owner pro haec vice. The only method of imputing liability (after the amendment to the Act) to an employer-owner pro haec vice, is if the negligence is that of a non-stevedore employee.