Willie C. NOEL, Plaintiff,

v.

GEOSOURCE, INC., XYZ Tugboat,
Defendants.

Civ. A. No. 81–2715.

United States District Court,
E.D. Louisiana.

May 1, 1984.

Patrick M. Amedee, Bobby J. Delise, David C. Vosbein, New Orleans, La., for plaintiff.

John L. Hantel, New Orleans, La., for intervenor.

Gerard Gelpi, Robert McCleskey, Jr., New Orleans, La., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

CASSIBRY, Senior District Judge.

The plaintiff Willie C. Noel seeks damages from his employer defendant Geo-

and therefore, plaintiff's present lawsuit is not    frivolous, unreasonable, or without foundation.

source, Inc., for personal injuries he sustained on or about September 18, 1979 when he was employed as a sandblaster and painter in a shipyard owned and operated by the defendant. Plaintiff was injured when a harbor tug used by the defendant to shift barges and equipment at the shipyard facility caused a crane barge to make contact with the moored barge on which plaintiff was working, trapping the plaintiff's foot between the dock and the moored barge and crushing it. I find in favor of the plaintiff and enter the following Findings of Fact and Conclusions of Law.

## FINDINGS OF FACT

1.

Plaintiff Willie C. Noel was a longshoreman employed by defendant Geosource, Inc., at the time of the accident.

2.

Defendant Geosource, Inc., was the owner of the shipyard at which plaintiff was employed, and was the owner of a tugboat operated by another of its employees Charles Brinston, who was moving a crane barge located in the yard at the time of the accident. The tug's principal use was to move barges to facilitate the painting and repair work being done in the yard.

3.

Plaintiff was painting draft marks on the upper part of a barge docked in the shipyard and a coworker Frederick Bailey was painting draft marks on the lower portion of the barge. The defendant was not the owner of this barge.

4.

Plaintiff was working on a catwalk dock permanently attached to the shore of the shipyard, and his coworker Bailey was working underneath the catwalk, standing on piling and leaning down to paint. The movement of the barge in towards and out from the dock caused plaintiff to realize that Bailey's position was not safe. Plaintiff helped Bailey pull himself up to the catwalk and then started pushing the barge away from the dock.

5.

In the meantime Brinston was shifting the crane barge into position alongside the moored barge on which the plaintiff was working. Brinston did not know that the plaintiff and Bailey were working on the barge. He could not see the workers and they could not see him. Ray Fidel, a Geosource, Inc., shipyard supervisor, had not told him where workers had been assigned for work, and had not instructed him to sound his whistle as a warning to workers in the area of the moored barge where plaintiff was working, and he did not sound his whistle. The plaintiff could hear the tug, but he did not know its location in the yard or the task it was undertaking.

6.

At the moment that plaintiff was attempting to push the barge away from the catwalk, he did not realize that one foot was between the barge and the catwalk, and at that moment the crane barge being pushed by the Geosource tug came into contact with the moored barge and crushed plaintiff's foot.

7.

Plaintiff was taken to West Jefferson Hospital where he was treated by Dr. Thomas Cashio, orthopaedic surgeon. X-ray examination showed that plaintiff had severe fractures of his second through fourth toes of his left foot and an open dislocation of his left great toe. The painful injury was complicated by infection in the wound area. The infected area was lanced to allow drainage.

8.

Manipulation of the fractures in the emergency room was not successful. Surgery was subsequently performed on the second through the fourth metatarsal necks to reduce the fractures. Three pins were placed against the toes. The surgery was successful, but after removal of the pins a further complication developed from bone fragmentation caused possibly from poor blood supply. He was discharged from the hospital on October 6, 1979.

9.

In followup visits to Dr. Cashio after discharge from the hospital, the pain continued and by May 1980 it had become severe. The plaintiff had developed traumatic arthritis. To relieve the pain Dr. Cashio excised a part of a joint that was painful on May 20, 1980 and sutured two toes together to prevent collapse. Dr. Cashio saw him last on August 27, 1981. The pain had lessened, but plaintiff still complained of discomfort.

10.

The plaintiff's left foot will never function normally again. The injured area takes the weight when the foot is lifted in walking. The plaintiff cannot perform a job which requires that he be on his feet all day. Further surgeries or treatment will not improve the function of the foot or relieve the pain and discomfort.

11.

The plaintiff suffered significant pain for at least nine months after his injury. Since his last surgery in May 1980 the pain has been milder, but he will continue to have some pain and discomfort. Although the foot has no appearance of deformity, plaintiff cannot bend it to walk normally, and walks only on the side of the foot or on the heel. He can only wear soft shoes. This permanent physical disability prevents him from resuming his occupation as a sandblaster and painter, and the outlook is that he will only be able to obtain a job paying minimum wages. His disability will also impair his ability to engage in sports and dancing and other activities, and to enjoy the normal pleasures of life.

12.

Plaintiff suffered mental distress from the fear of losing his foot and will continue to suffer distress from the realization that he can no longer support his family as he did in the past.

13.

The plaintiff was earning $7.70 per hour at the time of the injury and was hired to work a 40-hour week. He was allowed to earn overtime, but he did not produce any income tax record or other records to show his overtime earnings. The defendant produced evidence of three disciplinary actions against the plaintiff in 1979 for failure to maintain even a 40-hour work week or for missing work. In January 1979 plaintiff received a written warning for failure to maintain a 40-hour work week, and in February 1979 he was given a 3-day suspension for the same infraction. In August 1979 he received a 3-day suspension for missing work. Under these circumstances the plaintiff has not proved by a preponderance of the evidence his claim that he averaged five hours a week overtime, and overtime cannot be considered in the calculation of past or future loss of earning capacity.

14.

The assumption of the plaintiff's expert economist that the plaintiff could expect an increase of 6.25 percent annually in his earnings as painter and sandblaster is contrary to the testimony of the Personnel Administrator for Geosource, Inc., as to the economic conditions at Geosource brought about by the severe economic recession in the oil industry offshore of Louisiana. There has been a wage freeze at Geosource since 1981 and a lift of the freeze was not contemplated at the time of trial. A work force of approximately 250 in 1979 has been reduced to 82, and no employee laid off is rehired. Since August 1982 those employed work only every other week for a 40-hour week, with no allowance for overtime. Neither defendant's personnel administrator nor plaintiff's economist can predict an expected length for this recession. Under these circumstances plaintiff's expert economist's figure of $66,145.04 for loss of past earning capacity, and $260,290.09 for loss of future earning capacity have a reduced weight.[1] It would be un-

1. The economist's figures were based on a $7.70 past hourly wage rate, a $9.71 hourly current rate, an average 45-hour week, which included five hours' overtime at time and a half pay, a 11-month annual work period, a 6.25% annual increase in earnings, plaintiff's capability of

realistic, of course, to project this recession in the economy to the 28.3 years of plaintiff's work-life expectancy.

## CONCLUSIONS OF LAW

### 1.

The tug operated by Charles Brinston was a "vessel" within the intent of Section 5(b) of the Longshoremen and Harbor Workers' Compensation Act, 33 U.S.C. § 905(b), and plaintiff Willie Noel may bring an action for the vessel's negligence against his employer, the owner of the vessel.[2]

### 2.

 The defendant Geosource, Inc., was negligent. It breached its duty as owner of the tug to avoid exposing the plaintiff longshoreman to harm from hazards under the act or control of the tug. *Doucet v. Diamond M Drilling Co.*, 683 F.2d 886 (5th Cir.1982); *Helaire v. Mobil Oil Co.*, 709 F.2d 1031 (5th Cir.1983). Charles Brinston should have been made aware by Geosource personnel of the location of the longshoremen's work areas. Charles Brinston should have sounded the horn or the whistle on the tug to apprise plaintiff that he was working in the area, since Brinston was about to make contact with the moored barge in his tug operation.

### 3.

The negligence of the defendant was a proximate cause of plaintiff's injury.

### 4.

 The plaintiff was not contributorily negligent. Under the circumstance that he was attempting to push the barge away from the catwalk, he had no reason to anticipate that the barge would suddenly be pushed against the catwalk. His inattention to the position of his left foot be-

earning a minimum wage of $3.35 per hour, a work-life expectancy for plaintiff of 28.3 years, and a discount rate of ten percent.

**2.** Section 905(b) provides in pertinent part:
In the event of injury to a person covered under this chapter caused by the negligence of

tween the catwalk and the barge is therefore not negligence on his part.

### 5.

 The plaintiff is awarded the following damages:

| | |
|---|---|
| Past and future pain and suffering, including permanent physical disability | $100,000.00 |
| Past and future mental suffering | 30,000.00 |
| Past loss of earning capacity | 28,950.00 |
| Future loss of earning capacity | 170,290.00 |
| Past medical expenses (stipulated) | 12,412.00 |
| TOTAL | $341,652.00 |

The Clerk shall enter judgment in favor of plaintiff for the above amount with recognition of the claim of Intervenor, The Hartford, compensation insurer of Geosource, Inc., for benefits paid which have been stipulated to be $37,771.92.

a vessel, then such person * * * may bring an action against such vessel as a third party ...
The Court of Appeals, Fifth Circuit, held in *Smith v. M/V Captain Fred*, 546 F.2d 119 (1977):
* * * an employee may sue his employer qua vessel if he was injured as a result of the vessel's negligence.