Ellis J. DUCREPONT

v.

**BATON ROUGE MARINE ENTERPRISES, INC., Federal Insurance Company.**

Civ. A. No. 86–358.

United States District Court,
E.D. Louisiana.

Aug. 14, 1987.

and Harbor Workers' Compensation Act's 1984 Amendments to a Section 905(b) negligence action brought by an injured ship repairer against the employer-vessel owner. The Motion to Dismiss of Baton Rouge Marine Enterprises, Inc. is GRANTED. Fed.R.Civ.P. 41(b). The 1984 Amendments to the Longshore and Harbor Workers' Compensation Act bar plaintiff's negligence action under Section 5(b) of the Act. Plaintiff's remedy is limited to the workers' compensation scheme established by the Longshore Act.

## I. BACKGROUND

Plaintiff brought this action under the Jones Act, 46 U.S.C. § 688, the general maritime law, and, in the alternative, under Section 5(b) of the Longshore and Harbor Workers' Compensation Act, 33 U.S.C. § 901 et seq. On defendant's earlier motion for summary judgment, the Court dismissed the Jones Act and general maritime claims because plaintiff could not establish the requisite "seaman" and "vessel" status. The Court denied summary judgment as to the Section 905(b) negligence claim because of the presence of fact issues. Thereafter, plaintiff amended his complaint to include an alternative claim of unseaworthiness based on the *Sieracki* doctrine. *Seas Shipping Company v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). The Court granted Baton Rouge Marine Enterprise's motion to bifurcate the trial (without objection by plaintiff) and heard only evidence regarding the threshold issue of the applicability of the 1984 Amendments. At the close of plaintiff's case concerning that issue, defendant moved for dismissal under Federal Rule 41(b).

Plaintiff, Ellis J. Ducrepont, sued for injuries he sustained in a slip and fall aboard defendant's work barge on March 20, 1985. At the time of the accident, plaintiff was employed by Baton Rouge Marine Enterprises, which owned the work barge.[1] In

Lestelle & Lestelle, Terrence J. Lestelle, New Orleans, La., Kelly & Salim, Donald G. Kelly, Natchitoches, La., for plaintiff.

Abbott, Webb, Best & Meeks, Larry E. Abbott, Elton Duncan, III, Adams & Reese, Edward Rice, Jr., Montgomery, Barnett, Brown, Read, Hammond & Mintz, Wood Brown, New Orleans, La., for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

Defendant's Rule 41(b) motion for an involuntary dismissal squarely raises for the first time since their enactment the question of the applicability of the Longshore

---

1. Prior to November 1984, plaintiff worked for Baton Rouge Dry Dock, which had financial problems. Baton Rouge Marine Enterprises was formed in March 1984 to assist the failing dry dock company. Enterprises allowed Dry Dock to use its work barge which was equipped with the hot water boilers that were necessary for cleaning and gas-freeing before repair work could be done. When Dry Dock went bankrupt in November 1984, Baton Rouge Marine Enter-

his capacity as Vice President and Supervisor, plaintiff was primarily charged with overseeing the cleaning, repairing, and fleeting services Baton Rouge Marine Enterprises provided various barge customers. The work barge upon which plaintiff was injured served as a work platform from which plaintiff's employer conducted its business. Plaintiff also repaired the boilers which provided the work platform with the hot water necessary to make the barges gas-free before the repair work could be done. On the day of the accident plaintiff was descending the stairs connecting the upper and main decks in order to leave at the end of the day, when he slipped and fell. Mr. Ducrepont claims that the defendant-employer is liable under Section 905(b) for negligently failing to repair a defective stairway which it knew or should have known was defective, or alternatively, under the *Sieracki* doctrine based on the unseaworthy condition created by the dangerous stairway.

These facts trigger an inquiry into the 1984 Amendments to the Act. To better understand them, it is useful to pause briefly and revisit some recent history.

## II. THE LONGSHORE AND HARBOR WORKERS' COMPENSATION ACT

The Longshore and Harbor Workers' Compensation Act established a compensation scheme for injured maritime workers. Since its enactment in 1927, an employer's compensation liability was to "be exclusive and in place of all other liability of such employer to the employee". 33 U.S.C. § 905(a). Prior to 1972, the Supreme Court adopted a liberal view under which shipowners were held liable to injured employees of independent contractors working shipboard; liability was based on the warranty of seaworthiness. *Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946). This seaworthiness remedy "went beyond negligence in two important respects". *Hess v. Upper Mississippi Towing Corp.*, 559 F.2d

1030, 1032 (5th Cir.1977), *cert. denied*, 435 U.S. 924, 98 S.Ct. 1489, 55 L.Ed.2d 518 (1978). First, the shipowner could be sued for "transitory" defects which arose even after the opportunity to correct them had passed. *Mitchell v. Trawler Racer, Inc.*, 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960). Second, the shipowner was held responsible for any unsafe condition, even those caused entirely by the act of a third party, including the independent contractor. *Alaska Steamship Company v. Patterson*, 347 U.S. 396, 74 S.Ct. 601, 98 L.Ed. 798 (1954). A vessel sued for unseaworthiness could then demand indemnity from the repairer-employer on the theory that the employer under hire had breached an express or implied warranty of workmanlike performance to the vessel. *See Smith v. M/V Captain Fred*, 546 F.2d 119, 120 (5th Cir.1977). Employers remained exposed to responsibility beyond the statutory compensation benefits. "This procedure in effect made an end run around the exclusive liability provision of the LHWCA." *Id.* (footnote omitted). In 1972, Congress amended the Act. Congress substantially raised the compensation benefits payable under the Act, eliminated the employee's unseaworthiness action, and restricted his recovery from the shipowner to theories of negligence. Conventional wisdom taught that the 1972 Amendments reaffirmed the legislative goal of limiting an employer to liability for compensation and medical benefits provided in the Act. *See Smith v. M/V Captain Fred*, 546 F.2d at 121.

### A. The 1972 Amendments

The 1972 Amendments "effectuated a fundamental restructuring of the rights and remedies available to harbor workers in third party actions." *Parker v. South Louisiana Contractors, Inc.*, 537 F.2d 113, 117 (5th Cir.1976), *cert. denied*, 430 U.S. 906, 97 S.Ct. 1175, 51 L.Ed.2d 582 (1977). The principal aim of the amendments was

---

prises became plaintiff's employer. The work barge was afloat on the Mississippi River at Mile 208 at the time of the accident. Mr. Ducrepont is covered by the Longshore Act. Evidence presented at trial established that he is a "person engaged in maritime employment" under § 902(3) who was injured "upon the navigable waters of the United States" under § 3(a) of the LHWCA. The parties do not seriously dispute coverage.

to legislatively overrule the now well-known *Seas Shipping Co. v. Sieracki*, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099 (1946) and *Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp.*, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133 (1956), which allowed an injured employee to impose indirect liability on his employer for damages in excess of compensation limits. Thus, the 1972 legislation was primarily designed to prevent "continued circumvention of section 905(a) of the LHWCA, which makes compensation the employee's exclusive remedy against his employer." [2] *Id.*

As amended in 1972, Section 905(b) afforded an employee who was injured because of vessel negligence the right to bring a third party action against the vessel based on negligence alone.[3] The 1972 amendments made it clear that the employer would not be "liable to the vessel for such damages directly or indirectly." 33 U.S.C. § 905(b) (1972). However, the amendments targeted another problem as well. Further limiting third-party actions, Section 905(b) expressly provided that if the plaintiff

"was employed by the vessel to provide shipbuilding or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel."

*Id.* "Taken as a whole, the manifest purpose of section 905(b) [was] to curtail ... the availability of third party actions in admiralty." *Parker*, 537 F.2d at 117.

But in spite of Congress' effort to restrict the availability of such actions, prior to the 1984 Amendments, Congress felt that Section 905(b)

"has been judicially interpreted to allow a shipyard employee to bring a maritime negligence action against its employer in the latter's capacity as owner of a vessel being built or repaired."

S.Rep. on Conference Rep. on S. 38, Longshore and Harbor Workers' Compensation Act Amendments of 1984 (Sept. 20, 1984) (statement of Sen. Nickles). The goal of Congress seemed thwarted because the Fifth Circuit, in *M/V Captain Fred, supra*, interpreted the 1972 Amendments as permitting a negligence action against a vessel owner who would otherwise be immune from suit as the plaintiff's employer under Section 905(a). The Court reasoned that,

---

2. Section 905(a) provides:

The liability of an employer prescribed in section 904 of this title shall be exclusive and in place of all other liability of such employer to the employee, his legal representative, husband or wife, parents, dependents, next of kin, and anyone otherwise entitled to recover damages from such employer at law or in admiralty on account of such injury or death, except that if an employer fails to secure payment of compensation as required by this chapter, an injured employee, or his legal representative in case death results from the injury, may elect to claim compensation under the chapter, or to maintain an action at law or in admiralty for damages on account of such injury or death. In such action the defendant may not plead as a defense that the injury was caused by the negligence of a fellow servant, or that the employee assumed the risk of his employment, or that the injury was due to the contributory negligence of the employee. For purposes of this subsection, a contractor shall be deemed the employer of a subcontractor's employees only if the subcontractor fails to secure the payment of compensation as required by section 904 of this title.

3. The 1972 version of Section 905(b) provided:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled· to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of Section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing stevedoring services to the vessel. If such person was employed by the vessel to provide ship building or repair services, no such action shall be permitted if the injury was caused by the negligence of persons engaged in providing shipbuilding or repair services to the vessel. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

through the 1972 Amendments, Congress still believed

"that the same principles should apply in determining liability of the vessel which employs its own longshoremen or ship builders or repairmen as apply when an independent contractor employs such persons."

546 F.2d at 123 (quoting H.R.Rep. No. 1441, 92 Cong., 2d Sess., *reprinted in* 1972 U.S.Code Cong. & Admin.News, pp. 4698, 4705). *Captain Fred* took an unexpected turn in dealing with an employee who brought a Section 905(b) negligence action against the employer-vessel owner which engaged in shipbuilding or repair services. The Fifth Circuit read the 1972 Amendments as establishing the Section 905(b) liability of an employer who is also the owner of the vessel ... even though by its terms the LHWCA precluded an action by one

"employed by the vessel to provide ship building or repair services ... if the injury was caused by the negligence of persons engaged in providing ship building or repair services to the vessel."

33 U.S.C. § 905(b) (1972).

To reconcile these seemingly inconsistent themes, courts undertook the difficult and sometimes chimeric task of characterizing negligence in terms of that occasioned by an employee in his capacity as a shipbuilder or repairer, and that caused by an employee acting as agent of the vessel. In *Smith v. Eastern Seaboard Pile Driving, Inc.*, 604 F.2d 789, 795 (2d Cir.1979), the Second Circuit explained that in order to determine liability on the part of a shipowner-employer, "a court must decide if the negligence

that caused the accident was 'owner occasioned.' " The court identified the frustrating puzzle:

"the key issue is whether the ship-owner's employees who were at fault committed the negligent acts in their capacity as agents of the vessel on the one hand or as employees performing longshoring, ship building, or repair services on the other."

*Id. See also Jones & Laughlin Steel Corp. v. Pfeifer*, 462 U.S. 523, 531 n. 6, 103 S.Ct. 2541, 2547 n. 6, 76 L.Ed.2d 768 (1983); *Richendollar v. Diamond M Drilling Company*, 784 F.2d 580, 586 (5th Cir.1986), *aff'd in part, rev'd in part*, 819 F.2d 124 (5th Cir.1987) (en banc).

The Fifth Circuit continued this analysis in *Pichoff v. Bisso Towboat Company*, 748 F.2d 300, 303 (5th Cir.1984), but suggested its dissatisfaction with the test: "The line between owner and repairer is dull and elusive, at best." *Id.* With the passage of the 1984 Amendments, however, the need to characterize negligence would become obsolete. "Fortunately", the Fifth Circuit sighed with relief, "the Congress has for future cases ended this sometimes pretentious distinction." *Id.* That dictum was prophetic.

**B. The 1984 Amendments**

In direct response to the unintended duality in which an employer performing repair or shipbuilding services could nevertheless be liable for negligence in its capacity as vessel owner, Congress in 1984 amended the Longshore and Harbor Workers' Compensation Act.[4] The legislation

---

4. Section 905(b) as amended in 1984 now reads:

In the event of injury to a person covered under this chapter caused by the negligence of a vessel, then such person, or anyone otherwise entitled to recover damages by reason thereof, may bring an action against such vessel as a third party in accordance with the provisions of section 933 of this title, and the employer shall not be liable to the vessel for such damages directly or indirectly and any agreements or warranties to the contrary shall be void. If such person was employed by the vessel to provide stevedoring services, no such action shall be permitted if the injury was caused by the negligence of persons en-

gaged in providing stevedoring services to the vessel. If such person was employed to provide shipbuilding, repairing, or breaking services and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel, no such action shall be permitted, in whole or in part or directly or indirectly, against the injured person's employer (in any capacity, including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer. The liability of the vessel under this subsection shall not be based upon the warranty of seaworthiness or a breach thereof at the time the injury occurred. The

specifically "addresse[d] this dual capacity problem", according to the Senate Report. S.Rep. on Conference Rep. on S. 38. Section 905(b) as amended in 1984 is more direct and contains significantly new language when compared to its 1972 counterpart; it now provides that if a person injured by vessel negligence

> "was employed to provide shipbuilding, repairing, or breaking services *and such person's employer was the owner, owner pro hac vice, agent, operator, or charterer of the vessel,* no such action shall be permitted, *in whole or in part or directly or indirectly,* against the injured person's employer (*in any capacity,* including as the vessel's owner, owner pro hac vice, agent, operator, or charterer) or against the employees of the employer."

33 U.S.C. § 905(b) (1984) (emphasis added).

One senses Congress' restiveness. Congress was determined to achieve its 1972 goal, which it felt had been judicially frustrated. With the 1984 Amendments, it succeeded. The legislative purpose of the 1984 Amendments is made clear:

> "In amending the act today, we are strengthening further the language in section 905(b) to provide statutory immunity to shipyards against such negligence action. We believe this achieves the goal of the conferees of making workers' compensation under the Longshore Act the exclusive remedy against an employer and insulating the latter from multiple liability."

*Id.*

And so, Congress overcame the judicially created distinction between negligence as vessel owner and vessel repairer in 905(b) claims.

But the analysis continues.

### III. APPLICATION OF THE 1984 AMENDMENTS

The facts that were developed at trial raise three important issues concerning the applicability of the Amendments.[5] First, in order for an employer to invoke immunity from liability for negligence, must its employee actually be engaged in repair services at the time of the injury? Second, are supervisors who oversee the repair operations performed by employees under their charge barred by the 1984 Amendments from bringing a negligence claim against their employers? Third, if the plaintiff is employed to provide both ship cleaning and ship repairing services, must the employer's defense of statutory immunity be apportioned according to the percentage of time engaged in repair services alone?

### A. Activity at Time of Accident

Undisputed testimony at trial indicates that Mr. Ducrepont was injured when he descended the stairway in order to leave the barge at the end of the work day. Accordingly, at the very moment of the accident plaintiff certainly was not actively engaged in providing ship repair services. However, this fact alone will not preclude coverage by the 1984 Amendments. Applicability of the Longshore Act does not depend on the particular activity engaged in at the instant of injury.

The Court finds that a plaintiff need not be in the act of performing repair services at the moment of the accident in order to come within coverage of the 1984 Amendments. A person "does not cease to be covered by the Act merely because at the moment of injury he is not performing his usual duties." *Reynolds v. Ingalls Shipbuilding Division, Litton Systems, Inc.,* 788 F.2d 264, 271 n. 8 (5th Cir.), *cert. denied,* —— U.S. ——, 107 S.Ct. 278, 93 L.Ed.2d 253 (1986). Employing the broad construction used to determine status issues under the LHWCA, the Fifth Circuit in *Reynolds* held that a shipfitter who was washing dishes in the steward's department at the time of his injury, was engaged

remedy provided in this subsection shall be exclusive of all other remedies against the vessel except remedies available under this chapter.

**5.** The 1984 Amendments to the Longshore Act, Pub.L. No. 98–426, became effective on September 28, 1984, and the accident occurred on March 20, 1985. The Amendments therefore apply to this case.

in "shipbuilding services" and therefore barred from bringing a Section 905(b) claim against his employer.[6] Although Reynolds was not engaged in his regular duties at the time of the accident (he was not assigned as a dishwasher), his employer was performing services "incidental to its contractual obligation to build a ship." 788 F.2d at 273. *See also Brady-Hamilton Stevedore Company v. Herron,* 568 F.2d 137, 140 (9th Cir.1978) (one engaged in longshoring activity during at least a portion of his working day is covered by the LHWCA since to exclude him would be to reinstate the same degree of "shifting and fortuitous coverage that Congress intended to eliminate"); *Stockman v. John T. Clark & Son of Boston, Inc.,* 539 F.2d 264 (1st Cir.1976), *cert. denied,* 433 U.S. 908, 97 S.Ct. 2972, 53 L.Ed.2d 1092 (1977) (claimant's status under LHWCA need not depend wholly on job being performed at very moment of injury, for nature of claimant's regularly assigned duties must be looked at as a whole).

■ This conclusion is consistent with the expressed legislative purpose of the 1984 Amendments. In drafting the legislation, Congress noted that

> "the situation in which a worker may be covered at one time, and not covered at another, depending on the nature of the work which the worker is performing at the time of the injury must be avoided since such a result would be enormously destabilizing, and would thus defeat one of the essential purposes of these amendments."

1984 U.S.Code Cong. & Ad.News, 2734 at 2736–37. Thus, plaintiff's coverage by the 1984 Amendments does not (and should not) depend on the fortuitous circumstance of whether his injury occurred while plaintiff was actively engaged in repair services or when leaving the barge after a day of repair work.

**6.** Although the Court in *Reynolds* applied the 1972 form of Section 905(b) of the Act, the same analysis is applicable to this case.

**7.** Although not essential to the Court's decision, plaintiff explained at trial that the delegation of work assignments aboard the barge GMT–401

**B. Are Supervisors Covered Under the Act?**

■ Plaintiff testified at trial that, as a Vice President and Supervisor of Baton Rouge Marine Enterprise operations, he oversaw ship repair and ship cleaning activities, operated the tug "Mr. Bill" in connection with fleeting services, and performed repairs of the work barge's hot water boilers.[7] In addition, Mr. Ducrepont solicited business for the company from time to time and processed work orders as they were received. It is apparent that plaintiff primarily functioned as a supervisor of Baton Rouge Marine's cleaning, fleeting and repairing operations. This fact does not exclude him from coverage by the 1984 Amendments.

■ The Court finds that supervisors of repair operations are persons "employed to provide" repair services for purposes of Section 5(b) of the LHWCA. The 1984 Amendments apply to those who oversee repair activities as well as to those actually performing the repair services themselves. In construing coverage extended under the Longshore Act, the courts have consistently taken an expansive view. *Northeast Marine Terminal Co. v. Caputo,* 432 U.S. 249, 268, 97 S.Ct. 2348, 2359, 53 L.Ed.2d 320 (1977). "The Act 'must be liberally construed in conformance with its purpose, and in a way which avoids harsh and incongruous results'" said the Court. *Id.* (quoting *Voris v. Eikel,* 346 U.S. 328, 333, 74 S.Ct. 88, 91, 98 L.Ed. 5 (1953)). Only "harsh and incongruous results" would follow from an interpretation that the 1984 Amendments cover those actually engaged in performing the repair services, but do not reach those who supervise the conduct of that same work. A repair worker would be entitled to compensation benefits but the one supervising the work would not. Form would become exalted over substance.

was not so compartmentalized as his title would suggest. Baton Rouge Marine Enterprises was a fairly small organization, and Mr. Ducrepont would perform whatever task was necessary at the time.

Just as supervisors of longshoring activities are deemed "engaged" in longshoring activity for purposes of the Longshore Act, supervisors of repair operations are persons substantively "employed to provide repair services" under the 1984 Amendments. In *Gilliam v. Wiley N. Jackson Company*, 659 F.2d 54 (5th Cir.1981), *cert. denied*, 459 U.S. 1169, 103 S.Ct. 813, 74 L.Ed.2d 1012 (1983), the Fifth Circuit held that a construction site foreman who merely supervised the unloading of a barge was equally engaged in maritime employment for purposes of the Act.

Mr. Ducrepont, as a supervisor, is an "integral and essential part of the overall longshoring operations" and to exclude him from coverage by the 1984 Amendments "would be to reinstate the same 'shifting and fortuitous' coverage" that Congress intended to eliminate when enacting the 1984 Amendments. *Brady-Hamilton*, 568 F.2d at 140.

### C. The Repairing-Cleaning Distinction

From November 1984 to March 20, 1985, the date of plaintiff's accident, Baton Rouge Marine Enterprises provided cleaning, repairing and fleeting services to barge customers. The evidence is in conflict as to the actual amount of time devoted to and income derived from each of those services. Plaintiff's admitted rough estimate at trial was that cleaning represented 75% of Baton Rouge Marine's efforts; repairing, 20%; and fleeting only 5%.[8] However, Baton Rouge Marine's President, William Oakley Clay, testified without challenge that on only two occasions did Baton Rouge Marine clean a vessel without also performing repair services for the customer.[9] It is clear, then, that cleaning services are integral to the repair services which are performed.

■ Counsel for plaintiff makes much of the cleaning-repairing division of labor. Plaintiff contends that his Section 905(b) negligence action is not barred by the 1984 Amendments because Baton Rouge Marine Enterprises engaged in cleaning and fleeting as well as ship repairing.[10] Just as prior to 1984 the courts evaluated a co-employee's negligence in terms of fault as vessel owner as opposed to fault as vessel repairer, so too, plaintiff asserts, should this Court analyze Section 905(b) liability according to cleaning services as distinguished from repair services. But this argument will not withstand scrutiny. It would give new life to the kind of awkward differences Congress wanted to discourage. The Court reemphasizes that the 1984 Amendments eliminated the "pretentious distinction" between a fellow employee's negligence as agent of the vessel owner and his liability as ship repairer. *See Pichoff*, 748 F.2d at 303. The 1984 Amendments clearly "provide statutory immunity to shipyards against [a Section 905(b)] ... negligence action" and establish "workers' compensation under the Longshore Act the exclusive remedy" in the dual capacity setting. S.Rep., *supra*. No longer is apportionment of fault necessary or proper. Section 905(b) explicitly states that a negligence action brought by a ship repairer against an owner-employer in any capacity is prohibited in whole or in part, directly and indirectly. The legislative directive is simple and clear. Thus, plaintiff's interpretation of the Amendments is conceptually unsound.

■ Furthermore, on the facts before the Court, counsel's argument for appor-

---

**8.** In support of his estimates, plaintiff introduced certain invoices and income statements generated by Baton Rouge Marine Enterprises for the November to March period. The glaring inconsistencies between the amount of repair work indicated by the invoices on the one hand, and that reflected by the income statements on the other, cast plaintiff's testimony into serious doubt. Plaintiff admitted the inconsistencies were his fault.

**9.** Although Baton Rouge Marine Enterprises did not own a drydock (which is required for underwater repairs), the company conducted repairs above water from its work platform, the GMT–401.

**10.** The 1984 Amendments list "shipbuilding, repairing", and "breaking" as activities requiring special consideration. 33 U.S.C. § 905(b) (1984). Section 905(b) does not expressly include fleeting or cleaning. Hence, plaintiff's claim that cleaning services are not covered.

tioning coverage of the 1984 Amendments according to cleaning and repairing activities is without merit. The evidence instructs that ship cleaning is an integral part of ship repairing at Baton Rouge Marine Enterprises. Ship cleaning and repairing are inexorably intertwined functions which represent a significant portion of the commercial activity in the shipyard. Mr. Ducrepont himself explained at trial that a customer's barge must be cleaned and made gas-free before certain repairs can be performed.[11] Confirming the intertwined relationship between cleaning and repairing, Mr. Clay underscored that on only two occasions did Baton Rouge Marine clean a barge without also repairing it. Cleaning is an essential step in the defendant's ship repair process.[12] It should not be separated out in applying the 1984 Amendments because to do so would reopen the "multiple liability" door Congress closed. S.Rep., *supra*.

This result is similarly faithful to the legislative intent of the 1984 Amendments. The legislation was expressly designed to "provide statutory immunity to shipyards" from negligence actions brought against them in their dual capacity as owners-employers. *Id.*

## IV. CONCLUSION

Plaintiff's Section 905(b) action against his employer as owner of the vessel is barred by the 1984 Amendments. Since Mr. Ducrepont was "employed to provide ... repairing ... services," any negligence action against his employer "in any capacity, including as the vessel's owner" is prohibited. 33 U.S.C. § 905(b) (1984).

. Defendant's Motion to Dismiss under Federal Rule 41(b) is granted and the complaint is dismissed, plaintiff to pay all costs. Judgment will be entered.[13]

---

11. For example, a vessel must be certified as gas-free before "hot work" (such as welding) can be done.

12. The fleeting operations conducted by Baton Rouge Marine Enterprises are similarly linked to providing repair services. Plaintiff explained that barges brought in to be cleaned and repaired are fleeted (similar to parking a car).

13. Because plaintiff is covered exclusively by the Longshore and Harbor Workers' Compensation Act, his alternative *Sieracki* claim for unseaworthiness is precluded. *Aparicio v. Swan Lake,* 643 F.2d 1109, 1118 (5th Cir.1981). Finally, for purposes of this decision, the Court assumes that the work barge in question is a vessel within the meaning of the Act but that issue was seriously disputed by the parties, and not reached here.